334 So.2d 494 (1976)
Bryan DUMEZ et al., Plaintiffs-Appellees,
v.
LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION et al., Defendants-Appellants.
No. 10504.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.
Writ Refused October 1, 1976.
*495 Charles Hughes, Bogalusa, for defendants-appellants.
Gerald A. Bosworth, Houma, for plaintiffs-appellees.
Before LANDRY, SARTAIN, BLANCHE, BAILES and PICKETT, JJ.
*496 SARTAIN, Judge.
In April of 1974, some seventeen high school students were declared ineligible to participate in interscholastic baseball athletics by the Louisiana High School Athletic Association (Association). The parents (appellees) of eight of these students instituted the present action against the Association, Vandebilt Catholic High School, H. L. Bourgeois High School, Terrebonne High School, and South Terrebonne High School (collectively referred to herein as LHSAA) seeking a permanent injunction prohibiting LHSAA from enforcing the Association's ruling. In due course the matter was heard and a previously issued temporary restraining order was made permanent via the preliminary injunction. From this judgment, LHSAA has appealed.
The Association is a voluntary organization of some four hundred forty-four high schools, public and private. Membership is restricted to the schools themselves. While the schools are represented by their respective principals, neither the principals, students nor coaches are members. The Association has complete control over interscholastic athletics in the state by virtue of the member schools' adherence to its rules and regulations. A Commissioner of athletics is charged with the duties of managing the affairs of the Association, ruling on eligibility requests, interpreting and enforcing the rules, etc. Any ruling of the Commissioner may be appealed to an Executive Committee.
The students in question were participating on interscholastic baseball teams of their respective high schools in Terrebonne Parish. At the same time these students also participated in various practice sessions held by the Babe Ruth Baseball League in Houma, Louisiana. When such dual participation came to the attention of the four high schools, each principal thereof reported the same to the Commissioner. The Commissioner found and ruled each of the students in violation of the Association's "independent team rule" and as a consequence thereof declared the students suspended from participation in interscholastic baseball for one year, the games they played in forfeited, and imposed a nominal fine on the schools.
The "independent team rule" is found in Art. I, sec. 12 of the Association's By-Laws:
Section 12. Playing With or Against Independent Teams
Rule 1A student shall not be permitted to take part in any branch of athletics not sponsored by the school while he is a member of a school team or squad, in that same sport. The penalty for the violation of this rule will be one year's suspension from participation in the sport in which the violation occurs.
EXCEPTIONThis rule is waived for golf, tennis and swimming.
On appeal to the Executive Committee the ruling of the Commissioner was upheld. This litigation followed.
The Babe Ruth Baseball League was instituted by the Houma Athletic Recreation Committee (H.A.R.C.) for the purpose of allowing boys between the ages of thirteen and sixteen years to participate in an organized summer baseball program. Actual competition in the league does not begin until the school session is terminated for summer vacation. Charters for membership in the league are issued on an annual basis by the National Association of Babe Ruth Leagues, Inc.
Each year copies of the Association's handbook are mailed to the principal of each member high school. In addition, the Association furnishes posters to be displayed in prominent locations on the school campus, i. e., bulletin boards and athletic *497 locker rooms. These posters, in pertinent part, read:
"ATTENTION ATHLETES!
ONE INELIGIBLE STUDENT MIGHT DISQUALIFY YOUR WHOLE TEAM. KNOW YOUR ELIGIBILITY RULES.
Consult your coach and principal on any questions concerning eligibility.
TO BE ELIGIBLE FOR THE HIGH SCHOOL TEAM YOU MUST. . .
* * *
10. Not Take Part in Any Branch of Athletics Not Sponsored by Your School While You are a Member of a School Team or Squad in that Same Sport.
This rule is waived for golf, tennis and swimming."
* * *
A brief review of the evidence is appropriate.

APPELLEES' WITNESSES
Mr. Richard Diamond, President of Babe Ruth League in Houma, stated that he had been associated with its summer baseball program for eighteen years. During this period of time he had observed that student athletes had taken part in Babe Ruth practice sessions while they were also members of their respective school's team. He was not aware of the rule in question and contended that inasmuch as high school coaches observed Babe Ruth practices, these coaches or other school employees should have notified Babe Ruth personnel that such activity was in violation of the eligibility rule. He acknowledged that he knew of no occasion where the Association ever acquiesced in any violation when it had been brought to the attention of the Association.
Mr. Hays Bonvillon became active in Babe Ruth League as a charter member in 1954 or 1955. He also served as a coach of one of its teams for some fifteen years, or until 1970. He stated that during this period of time he had numerous players on his Babe Ruth team who were all members of their school's team. He knew of no instance where such dual participation was reported to the school.
Teddy Duhe was a student athlete in 1960-1961. He was a member of his high school's baseball team and also practiced with a Babe Ruth team on weekends. He named some seven other athletes who did the same thing. Duhe was not familiar with the eligibility rule; consequently, he did not knowingly violate the same.
Allen Bonvillian (1954-1958), Richard Haydel (1957-1961), Louis Guenoit (1954-1958), Al Badeaux, Jr. (1956-1960) and Eddie Rullaro (1957-1961) testified that while they were members of their respective high school teams, they also practiced with the Babe Ruth team. None of these witnesses knew of the rule nor could they recall ever having been advised of its existence.
Jay Luke, one of the students declared ineligible, testified that he was not informed of the rule by his coach and did not knowingly violate the same. He stated that he was encouraged to practice with the Babe Ruth team by his high school coach (Bryan Guenoit). He was not questioned as to whether he had ever seen a copy of the poster, mentioned above. It was stipulated that if thirteen of the remaining affected students were called to testify, their testimony would be the same as Luke's.

LHSAA'S WITNESSES
Mr. Frank Spruiell, the Commissioner of Athletics for the Association, became associated with the Association in 1966. He served as an assistant to the then Commissioner for five years and as its Commissioner *498 since 1971. Prior to 1966 he taught at the high school level for fourteen years and in college for two years. He stated that the rule now under consideration has been in the Louisiana Association rule book for twenty-five years. He also said that the same rule or its equivalent is in the by-laws of the Associations of each of the fifty states of the United States. The purpose of the rule is to limit the participation of a student athlete in a given sport, both in competition and in practice. He explained that excessive athletic endeavors is deemed detrimental to a student's academic pursuits.
The instant infractions were made known to him when he was attending a track meet in Thibodeaux, Louisiana. During the course of the evening, the matter was discussed with a representative of each of the schools involved. He asked for full particulars which were forwarded to him by the schools. In due course, it was determined that the seventeen students were actually engaged in organized practices with the Babe Ruth team while they were also members of and playing with their respective high school squads.
Commissioner Spruiell documented some nine incidents where the violations of this rule were reported to the Commission's office and the action taken was identical to that complained of here.[1] On no occasion where there was a rule violation that was made known to the Commissioner's office was action not taken, i. e., the student suspended and any high school game in which the student participated declared forfeited.
Lucas J. Marcello is the athletic director and head football coach at South Terrebonne High School. He is also employed by the City of Houma as director of its summer recreation program (H.A.R.C.) of which the Babe Ruth League is a part. The Board of Directors of H.A.R.C. is composed of twenty volunteers. A number of these are public school employees. Marcello's duties with H.A.R.C. did not commence until the school's summer recess. This witness was an active school coach from 1950 to 1970. He stated that from the commencement of his coaching career he knew the rule and so advised his student athletes. When he was coaching baseball he would release his younger players from his school squad and recommend that they play with the Babe Ruth team for experience, once the latter program was underway. He had no personal knowledge of any dual participation on the part of students during these twenty years. He also stated that Coach Pierce at South Terrebonne High School had notified his senior varisity players of the rule. Three of the students involved are from South Terrebonne High School.[2] Coach Marcello acknowledged that Babe Ruth coaches were not informed of the rule.
Donald J. Landry, principal at South Terrebonne High School, testified that the rule has been enforced during the last seven years he has served as principal. He also stated that the posters were placed on the school's bulletin boards.
John Pettigrew, a local attorney, stated that he played baseball at Terrebonne High School from 1963 to 1965. He was informed by his school coach that you could not participate simultaneously in both programs.
John W. Chaisson has served at Terrebonne High School for the last four years as assistant principal. For some eight years prior thereto he coached baseball in the Houma area public schools. For three years (approximately 1967 to 1970) he was *499 baseball coach at Terrebonne High. He knew of the rule and so informed his student athletes. They could participate in one or the other program, but not both at the same time. This witness was one who was identified as having done so during his student years by Louis Guenoit, above. He (Chaisson) categorically denied such participation and further added that during his high school years his coaches advised him of the rule.
It was this witness who discovered the infractions of the rule in the instant matter. He overheard Coach Whatley say that young Craig Falgout had injured himself during a Babe Ruth practice and could not play for his high school team. Coach Whatley did not know that it was a violation. A conference ensued between Chaisson and the four coaches of the schools involved. It was determined by those present that it was a violation to engage in dual participation and the matter was reported to the Commission by the principals of the respective schools.
Warren Sevin has served at Terrebonne High School for a period in excess of fifteen years, the last seven as its principal. He has been familiar with the rule ever since he has had an administrative position with the school, that is, for the past twelve years. He stated that at the beginning of each academic year, the administrative and athletic staffs met at which time copies of the Association's official handbook are distributed to each coach and a general discussion is had relative to the rules. Further, copies of the posters mentioned above are framed and placed at five prominent locations on their school's campus.
The following questions by the trial judge and this witness's response thereto is noted:
THE COURT:
Let me ask you a question. From what I have gathered from what some of these people and youngsters have said, once you join the Babe Ruth program, it is sort of one of these lifetime deals that you consistently are in the organization and either you have to get way too old or die before you are striked from the roll. If you have one of your coaches that would participate in Babe Ruth and a youngster would go out on a Sunday afternoon and play in a practice session, I guess that is not the exact terminology but he would be out there with a group of boys in the Babe Ruth team at a practice session, do you think that that boy would be violating the specific letter and spirit of the rule?
MR. SEVIN:
If the circumstances were such that two or three people were playing pitch and catch and the coach was there or parties around them, it would be questionable as to whether or not that situation would be a violation. However, the situation we were aware of which occurred this last spring, last April, it was considerably more than that. It was from the facts we know definitely was an organized practice.
THE COURT:
It was a practice session.
MR. SEVEN:
Yes, it was.
Mr. Louis Dallas Rogers presently serves as assistant superintendent of schools in Terrebonne Parish. He was principal of Terrebonne High School for fourteen years, 1956 to 1968. He recalls the existence of the rule as far back as 1948 when he was an assistant coach. Mr. Rogers also coached Little League and Babe Ruth baseball teams. He stated that he always advised his Babe Ruth teams that they could not participate in both programs. He could not state if other coaches of Babe Ruth teams did the same. He knew of no instance during his long tenure in both programs where either party knowingly permitted dual participation or that the Association *500 with knowledge of an infraction ever acquiesced in the same.
Finally, it was stipulated that the rule had been uniformly applied by the Association.

CONCLUSIONS OF FACT
We think the following conclusions are pertinent. It is evident that from time to time various student athletes did in fact participate in both programs. Some of the student athletes were not informed of the rule and others were. Most of the Babe Ruth teams are coached by volunteers, including parents and other interested citizens. These volunteer coaches did not nor can they be expected to know the rule in question.
It is apparent that the instant athletes were not verbally informed of the rule. This hit and miss affair has apparently continued for many years. We think the reason is due in large part to the fact that Babe Ruth practice commenced prior to and actual competition within the league commenced after the high school baseball season was over. The directors and/or coaches of each were primarily concerned with their immediate task and had no reason to believe that their common endeavors might prove conflicting.
Not one single witness on either side of this controversy accused the other of knowingly permitting or encouraging the infraction of this particular eligibility rule.
The basis for the district court's decision is found in the trial judge's written reasons for judgment:
"This Court must necessarily conclude that the affected players were misled by their coaches who allowed them to practice Babe Ruth and play for their respective schools at the same time. This is not to say that the affected players were purposely misled, but in the Court's opinion, being misled is enough. If any action should have been taken by LHSAA, it should have been directed against the schools, but not the innocent parties affected. Therein lies the serious inequity, although indirectly the student would ultimately share the fate of the school. Here, the youngster is branded as the wrongdoer and this is not so. With reference to the coaches at the various high schools, it is the Court's opinion that they are indeed agents of the LHSAA. The defendant, LHSAA, so stated in their brief at page 15:
"`The uninformed may think some rules unwise, or unfair, but the men whose business it is to supervise high school athletics in this statethe coaches and the principals acting through their associationhave thought otherwise. Such is the rule. Such is the system.'
"See Patrick v. Patrick, 230 So.2d 759 (La.App., 2d Cir. 1970).
"Naturally, any action by an agent clothed with authority binds the principal. That is one reason why the injunctive relief as prayed for be granted. As stated by counsel for the plaintiffs in his brief at page 12, and I agree:
"`We just cannot allow coaches who are agents of the LHSAA to encourage an activity then have the LHSAA punish one for engaging in that activity.'
"This action flies in the face of both due process of law and equal protection of law as guaranteed by both State and Federal Constitutions."
LHSAA contends that the trial court erred by (1) intervening in the internal affairs of a voluntary association; (2) in holding that the action of the association violated the students' constitutional rights to equal protection and due process; and, (3) in failing to hold that the action of the Association under the present circumstances *501 was reasonable and necessary. We shall discuss these points in the order mentioned.

VOLUNTARY ASSOCIATION
Our courts have long adhered to the general rule that they will not interfere in the internal affairs of a private association so long as its affairs and proceedings are conducted fairly and honestly, and after due notice to everyone involved. Heuer v. Crescent City River Pilot's Association, 158 So.2d 221 (La.App., 4th 1963), writs denied, 245 La. 580, 159 So.2d 288. This rule has been cited in numerous cases involving the Association.Marino v. Waters et al., 220 So.2d 802 (La.App., 1st 1969); David v. LHSAA, 244 So.2d 292 (La.App., 1st 1971); Sanders v. LHSAA, 242 So.2d 19 (La.App., 3rd 1970); Watkins v. LHSAA, 301 So.2d 695 (La.App., 3rd 1974); and, Chabert v. LHSAA, 323 So.2d 774 (La.,1975).
With the exception of Sanders, the cited cases prior to Chabert did not address themselves to a consideration of the nature of the action complained of, i. e., whether the action of the Association is purely private or whether such action is under "color" of state law. In this regard, we now note that students, coaches and principals are not members of the Association. Accordingly, when the eligibility rule now under consideration is invoked and sanctions are imposed against one or more students, resulting litigation is not, contrary to LHSAA's contention, involved solely with the internal affairs of a voluntary association.
We also note that everyone of our public schools that engages in interscholastic athletic competition is of necessity a member of the Association. The facilities used for athletic contests are public properties and the school administrators (principals, etc.) and coaches are paid out of public funds. In addition, we agree with the view expressed by all of the parties to this litigation that participation in interscholastic athletics is an integral part of the overall academic process. Under these conditions, it matters not that the association considers itself to be a private, voluntary organization. Its actions in regulating public school athletic activities and imposing sanctions for violations of its rules constitute "state action".
Therefore, the Association's activities are subject to court scrutiny when a litigant contends he is denied equal protection or due process of law by the enforcement of its rules. Chabert, above.
Prior to considering the constitutional questions it should be emphasized that appellees have no quarrel with the rational basis for or the purposes of the rule, that is, to protect student athletes from excessive athletic endeavors. Their grievance concerns the application of the rule to them under the facts here presented.

EQUAL PROTECTION
We construe appellees' position on their claims of denial of equal protection to be based on the assumption that the Association in the past has not uniformly invoked the suspension the rule imposes or that the Association has not been consistent in acting in the face of known violations. While the evidence detailed above shows that for a number of years various students did engage in dual participation, the record is entirely devoid of any evidence that such participation was known by the principals who represented the schools or by any officer of the Association. As to the coaches of the four schools involved, the trial judge stated in his written reasons that they did not "purposely" mislead the students.
It was stipulated between counsel for the parties to this action that on each occasion that a violation of this eligibility rule was revealed to the Association, the latter's actions were consistent and uniform. Immediate investigations followed and suspensions *502 of one year were imposed. Under these circumstances, the affected students in the instant action have not been denied equal protection of the law.

DUE PROCESS
On the question of due process, appellees' contentions relate to both substantive and procedural aspects thereof.
As stated above, appellees have no quarrel with the purpose (rational basis) of the rule in question. However, they do argue that it must have been misunderstood by the coaches, else these coaches would not have encouraged the affected students to participate with the independent, Babe Ruth, teams. It is well recognized that a rule or law, if ambiguous or vague, may fall short of the constitutional requirement for due process. We can not say, and the record does not confirm, what the coaches' interpretation of this rule was. The rule itself must stand the test of clarity. Inasmuch as it is applicable to high school students, the test to be applied is that it must be capable of comprehension by a student who is possessed of average intelligence. Viewed in this light, a simple reading of the rule and reference thereto on the posters satisfies us that it is not vague or ambiguous.
Appellees cite Wright v. Arkansas Activities Assn., 501 F.2d 25 (8 Cir. 1974) for the proposition that judicial intervention is warranted when as association attempts to "inflict sanctions on non-members of the group" without notice. In Wright, the Association's rule provided that no member school could commence or conduct football practice except during a designated period. Coach Wright conducted practice sessions in violation of the rule. The Association gave the school a choice, either fire Wright or be suspended from football competition for one year. The school authorities asked Wright to resign his employment. The court found that the rule was silent as to any sanction and held that inasmuch as the scope of the rule depended upon the subjective appraisal of the Association, the rule itself violated the fundamental requirement of fairness (due process) by not containing a warning in language that the "common world" could understand. Such is not the case with the rule in the instant controversy because the same specifically states that the sanction for its violation is one year's ineligibility.
With respect to the procedural aspect of due process, appellees argue that they were not "verbally informed" of the rule. As stated above, the Association forwarded copies of the handbook and posters to each of its member schools. Copies of the handbook were not given to the students nor the contents therein explained to them by the coaches. However, the posters were displayed in promiment locations on the schools' campuses. The question then is: Does the placement of these posters satisfy the due process requirement of reasonable notice? We think it does.
We can not see the wisdom of nor the necessity for LHSAA furnishing the literally thousands of high school athletes with copies of its rule book. We do think that it is essential that they do advise students of a rule where the violation of that rule imposes a penalty and if the manner of notice is through a poster, then it behooves the student athlete to inform himself accordingly. Moreover, it is just as reasonable to assume in the instant case that the import of the rule would have escaped the attention of or gone unheeded by these students even if they had had copies of the rule book just as it escaped their attention notwithstanding the presence of the posters.
Appellees have argued that the executive director of the Commission pronounced them ineligible for student participation without giving them an opportunity to be heard. This issue is not without merit inasmuch as the rule does contain penal provisions that would render a student ineligible by virtue of his conduct where *503 he would otherwise remain eligible. However, this particular issue is mooted because an appeal was had to the executive committee and a hearing was conducted by the committee with the opportunity given for everyone to present their grievances. Absent any complaint by appellees either in brief or oral argument, it must further be assumed that the same evidence as presented in these proceedings was also presented to and considered by the Executive Committee.

APPLICATION OF THE RULE
We now turn to the real issue in this litigation. The essence of appellees' case is their claim that under the facts here presented the imposition of the suspension is unfair. Stated another way, they claim that the circumstances giving rise to their suspensions should have been given consideration in mitigation of the infractions and that the suspensions should not have been imposed. The trial judge found that the action of suspending the students without some further action being taken against the coaches or the schools constituted a serious "inequity" as to the students. However, his basis for enjoining the Association was on his determination that the coaches were the agents of the Association and as such had the authority to bind the Association. We can not agree with this conclusion. If this be proper grounds, then the hundreds of high school coaches in this state could render any rule utterly worthless. The interscholastic athletic arena would be reduced to a confused mass of participants without standards or limits.
Appellees are, therefore, in effect asking the court to rescind or modify the penalty of suspension, a judgment of the Association's final authority, its Executive Committee.
No case has been cited and our research has found none where a court has been called upon to rescind or modify a ruling of an athletic commission for purely mitigative reasons. Rather, absent the violation of a constitutional right or statutory law, we find no justification for judicial intervention in the affairs and proceedings of the Louisiana High School Athletic Association and its member schools.
Accordingly, for the above reasons, the permanent injunction issued by the district court is hereby set aside, recalled and vacated and judgment is rendered herein in favor of the defendants and against appellees dismissing the latters' suit at their cost.
REVERSED AND RENDERED.
BAILES, J. pro tem., dissented and filed opinion.
BAILES, Judge Pro Tem. (dissenting).
I must dissent from the holding of the majority that due process requirements have been satisfied.
As stated by the majority, "The rule itself must stand the test of clarity. Inasmuch as it is applicable to high school students, the test to be applied is that it must be capable of comprehension by a student who is possessed of average intelligence. Viewed in this light, a simple reading of the rule and reference thereto on the posters satisfies us that it is not vague or ambiguous." (Emphasis supplied.)
The mere statement and conclusion of the majority that a simple reading of the rule and reference thereto on the posters satisfies us that it is not vague or ambiguous does not satisfy the premise of clarity. The conclusion of the majority begs the question. As stated by the majority it is applicable to high school students (grades 9 through 12) and the test to be applied is whether it is capable of comprehension by a student of average intelligence.
*504 The majority has quoted Rule 1 in full thus there is no need to quote it again. However, the majority has not considered nor quoted Rule 2 which has specific application to summer baseball participation. Rule 1 in general terms states that a student is not to take part in any branch of athletics not sponsored by the school while he is a member of the school team, however, Rule 2 makes an explicit exception.
Rule 2 provides:
"Boys who play summer baseball or girls who play summer softball, provided they do not sign a professional contract, will not have their high school eligibility affected by playing, provided such play takes place after his school team has completed its baseball season and, before he becomes a member of any school team in the fall. They can neither play nor practice with such teams during the school year except as stated above."
There is no question that actual play or competition in the Babe Ruth league does not begin until the school session is terminated for summer vacation.
The lack of clarity of the rules is best demonstrated by the fact that seventeen of the students (of average intelligence and understanding) in the athletic program thought there was no violation of the rule. In addition, a number of their coaches were of the same understanding. Thus, a substantial number of persons were of the opinion that participation to the limited extent of practice was not proscribed. My own interpretation of the rules (Rule 1 and 2), after due deliberation, is that such activity is not proscribed.
The inescapable conclusion is that the rules at best are ambiguous. To put these students under the sanctions imposed by LHSAA is plainly and clearly a denial of due process.
I respectfully dissent.
NOTES
[1] Including the suspension in 1967 of four students on a basketball team of Vandebilt Catholic High School; one student on a baseball team of Terrebonne High School in 1971. The remaining incidents occurred in different parts of the state at seven other schools in 1974 and 1975.
[2] Tim Porche is a litigant herein. Ernest Bennett and Wayne Lyon are not litigants nor are their names listed in the stipulation following the testimony of Jay Luke.