No. 3544

Second Circuit

---

BANK OF WINNFIELD v. BRUMFIELD ET AL.

---

(November 18, 1929. Opinion and Decree.)

---

Moss and Moss, of Winnfield, attorneys for plaintiff, appellee.

H. W. Ayron and W. J. Hammon, of Jonesboro, attorneys for defendant, appellant.

ODOM, J. V. L. Brumfield was elected principal of the Jonesboro High School for the school year of 1928-1929, at a monthly salary of $250. The Jonesboro High School is a public school established by the Jackson Parish School Board and maintained with public funds. Brumfield's salary was budgeted by the Board and was to be paid monthly. The plaintiff bank had a judgment against him and by supplemental proceedings garnisheed his salary in the hands of the School Board.

Prior to answering interrogatories propounded to it by plaintiff bank touching the questions whether it was indebted to him or whether it had in its possession or under its control any funds or property belonging to him, the board tendered exceptions of no cause and no right of action which were referred to the merits. Under reservations, the Board answered that Brumfield was employed by it as principal of the Jonesboro High School for the term ending in May, 1929, but did not specify the amount, if any, due him at that time. These answers were not traversed, but we understand that it is conceded that at the time the answers were filed, the Board had in its hands $250 already earned by defendant on his salary.

Brumfield's defense is that he is an employee of a public board, a public servant whose salary is paid out of public funds dedicated to that specific purpose, that to all intents and purposes he is a public officer, and that his salary is not subject to seizure under the garnishment process, under the law. The School Board especially urged the defense that it would be against public policy to permit public

funds which had been dedicated to the payment of the salaries of its teachers to be seized while in its hands.

The case was tried on the following statement of facts:

"It is admitted that V. L. Brumfield is Principal of the Jonesboro High School, a public school of Jackson Parish, and that as principal he has the management, control and supervision of said school and that his duties are discharged for the advancement, education and the youth of the Town of Jonesboro and the surrounding community and having been employed as principal of said school for the year 1928-1929 and his salary of $250.00 was budgeted."

There was judgment in favor of the plaintiff bank, especially decreeing "that the salary due said V. L. Brumfield as principal of the Jonesboro High School by the Jackson Parish School Board is not exempt from seizure and garnishment process under the judgment rendered in this cause in favor of plaintiff."

From this judgment, both Brumfield and the School Board appealed.

OPINION.

In our opinion, the judgment appealed from is erroneous and must be reversed.

Pursuant to article 12, sec. 10 of the Constitution of 1921, the Legislature of 1922, by Act 100, sec. 17, created a parish school board for each of the parishes of the state, and constituted them bodies corporate with power to sue and be sued, and to make rules and regulations for their own government not inconsistent with the laws or the regulations of the State Board of Education. Under that act of the Legislature, all funds destined for the support of the free public schools of the state are paid to these boards to be used by them in support of the schools in their respective parishes. They are authorized to establish such public schools as they deem necessary to provide adequate school facilities for the children of the parish, to determine the number of schools to be opened, the location of schoolhouses, the number of teachers to be employed, and to fix their salaries.

These boards are therefore public corporations. Their functions are exclusively of a public character, and their acts are performed solely for the public benefit. The funds which they possess, administer, and disburse are public funds dedicated to a specific purpose. These boards are state agents, a part of the state government with only such powers and authority as are delegated to them by the state, and their relation to the state is the same as that of any other public corporation. Their acts are purely administrative. They act for the state in the administration of the affairs of the public school system; they have, and can have, no interest to subserve except that of the public.

The responsibility of maintaining adequate and efficient public schools in the parishes is laid upon the parish boards. To carry out that function, all funds destined for the support of the public schools are intrusted to them; to carry out the functions for which they are created, they are especially charged with the duty of employing capable, well-qualified superintendents and teachers. For the payment of the salaries of these teachers, the boards set aside and dedicate a portion of the public funds intrusted to them. When so dedicated, these funds cannot be diverted to any other purpose, except by and with the sanction of the boards themselves, and it is the plain duty of these boards to see that the funds which they have set aside to pay their teachers is used for that and no other pur-

pose. This is true, because to permit these funds to be diverted to any purpose, except for the maintenance of their teachers, would stifle them in their work, and thereby materially interfere with the orderly administration of public school affairs.

It is matter of common knowledge that teachers in public schools are poorly paid, and that it usually takes all of their salaries to maintain them as they go. Without pay, they cannot work, and, unless they work, the public interest suffers, and it is the board's duty to see, in so far as it can, that the public gets what it pays for. It is therefore the duty of these school boards, we think, for their own protection and for the protection of the public which they serve, to resist actions brought by creditors of their teachers for the purpose of diverting from their usual course the salaries of such teachers, not as a favor to the teachers or to shield them from their creditors, but to see that their services to the public are not interfered with. For this reason the school board was within its rights in defending this suit as it did, and we think that the exceptions tendered by the board should have been sustained.

Under article 647 of the Code of Practice, and under repeated decisions of our Supreme Court, salaries of public officers are exempt from garnishment while such salary remains in the public treasury or in the hands of the disbursing officer. The reason for the law exempting these salaries from seizure is stated by the court in the case of Fischer vs. Dubroca, 163 La. 292, 111 So. 710, 712, from which case we quote the following:

"The exemption rests upon the fundamental proposition that a public fund that is dedicated by law to a special purpose cannot be diverted to any other purpose except by the same authority that dedicated it. * * *

"The reason why, as a matter of public policy, a public officer's salary is not subject to seizure by garnishment process against the disbursing officer is that the orderly administration of public affairs should not be hampered in that way. An officer's salary is dedicated by law to the special purpose of paying for the service that he must render to the public, and, until the fund leaves the public treasury, it must not be diverted to any other purpose at the instance of any individual. The law does not exempt a public officer's salary from seizure, or shield it from liability for his debts, as a matter of grace or favor to him. The exemption prevails only so long as the salary remains in the public treasury or in the hands of the disbursing officer. Dunbar v. Dinkgrave, 10 La. Ann. 545."

The identical reason stated above why the salary of a public officer is exempt from seizure by garnishment process may be assigned for exempting the salary of a public school teacher from seizure. Public school teachers are public servants; their services as teachers are rendered solely in the interest of the public; public funds dedicated for the payment of their salaries are dedicated for the purpose of paying for the service which they must render to the public. If these funds are diverted and used for any other purpose, the public must necessarily suffer.

While there is no specific law exempting their salaries from seizure, we think it would be against public policy to permit public school affairs to be hampered by the seizure of the salaries of teachers. Our jurisprudence is uniform to the effect that the salary of a public officer is exempt from seizure, and, while our courts have not found it necessary to base their holdings upon the ground of public policy because our statutes especially make exemptions in favor of such officers, we have no doubt that, in the absence of any statutory exemption, our courts would have held that

such salaries are exempt as a matter of public policy. In practically all the decisions there are statements and suggestions that to permit such course would be against public policy.

In a strict, literal sense, a public school teacher may not be a public officer, although courts of last resort in many jurisdictions have considered them such in cases involving the question whether their salaries are subject to seizure under the provisions of statutes exempting officers' salaries from seizure, and in the case of Fifth Avenue Library Society vs. Miss Hortense Kilshaw, 7 Orl. App. 496, the court specifically held that public school teachers are officers. But, whether they be termed public officers or not, their relationship to the public is precisely the same as that of public officers, and the same reasons, from the standpoint of public policy, why a public officer's salary cannot be seized, apply to public school teachers. No distinction seems to have been made between public officers and public employees in cases of this kind, and it is well settled that the salary of neither can be seized while the same is in the hands of the board or disbursing officer.

"Upon grounds of public policy it is generally held that the salary or compensation of public officers and employees is not subject to execution, attachment, or garnishment, except under the authority of a statute broad enough to include them." 23 C. J. p. 334. See, also, 12 R. C. L. 802.

This rule applies to public school teachers.

"In the absence of special statutory enactment, the general rule is that the salaries of public officers or employees, such as officers or employees of towns, cities, villages, counties, or of a state or the national government cannot be reached by garnishment or trustee process, on the ground of public policy.

"In conformity with the above rule, the better doctrine seems to be that salaries due to teachers and superintendents of public schools cannot be reached by garnishment or trustee process in the hands of school trustees or the county or municipal treasury."

20 Cyc. 1030, 1031.

"The general rule of public policy whereby compensation for public service is judicially excepted from the operation of the general terms of the statutes defining garnishable property has been held to be applicable to the salaries of school officers. And, while there is some authority to the contrary, by the great weight of authority it is likewise applicable to the compensation of school teachers." 28 C. J. 182; 12 R. C. L. 802.

The reasons generally assigned why salaries of public school teachers are exempt from seizure under garnishment process are found in the case of Chamberlain vs. Watters et al., 10 Utah, 298, 37 P. 566, where the court said:

"But there is another reason why the contention of counsel cannot avail the appellant. In the case at bar the defendant Watters was a teacher in one of the public schools in the city of Ogden, regularly employed by the board of education, which board was created by authority of the legislature for the benefit of the public. Thus employed, he was a public servant, receiving a stipulated salary; and no portion of such salary, so long as the money remained in the hands of the board, was subject to the process of garnishment. There is perhaps no class of persons more intimately connected with the welfare of the municipality than the teachers in the public schools. Their labors are of interest to

the entire body of the people. As a general rule they belong to that class of persons who depend upon their salaries for the support of themselves and families. As a class, they are honorable, industrious public servants, and are generally poorly paid. If their wages, intended for the support of those dependent upon them, were subject to process of garnishment, the public might be deprived of their services at any time, and suffer great inconvenience because of interruptions in the management of the schools which would thus occur. The children of the country cannot be educated without competent teachers, and those teachers, usually devoting their whole time to their vocation, must have the necessaries of life; and their salaries ought not be subject to process which will tie them up, in the hands of a board of education, for an indefinite length of time, in disregard of the public interest. The territory has undertaken to establish, at great expense, a system of public schools, and it cannot allow the wages of the teachers to be intercepted, at the risk of the efficiency of the system being thereby impaired." Bulkley vs. Eckert, 3 Pa. 368, 45 Am. Dec. 650; Bivens vs. Harper, 59 Ill. 21; Hightower vs. Slaton, 54 Ga. 108, 21 Am. Rep. 273; Allen vs. Russell, 78 Ky. 105; Wallace vs. Lawyer, 54 Ind. 501, 23 Am. Rep. 661; Bell vs. Ga. Mil. College, 32 Ga. App. 527, 124 S. E. 52; Born vs. Williams, 81 Ga. 796, 7 S. E. 868; Heilbronner vs. Posey, 103 Ky. 462, 45 S. W. 505; Tracy vs. Hornbuckle, 8 Bush (Ky.) 336; Flood vs. Libby, 38 Wash. 366, 80 P. 533, 107 Am. St. Rep. 851; School Dist. vs. Gage, 39 Mich. 484, 33 Am. Rep. 421; Millison vs. Fisk, 43 Ill. 112.

It is ordered, adjudged, and decreed that the judgment appealed from be reversed; that the garnishment proceedings instituted by the plaintiff bank be quashed, and the seizure of defendant's salary in the hands of the Jackson parish school board be set aside; the plaintiff bank to pay all costs in both courts.