COVINGTON, Judge.
This appeal was taken by John M. Spain, as an individual member of the public and as a news media person, from a judgment of the District Court denying the plaintiff’s request for preliminary and permanent injunctions to keep the Louisiana High School Athletic Association from holding meetings other than those pursuant to the “Open Meetings” Law of this State.
This injunctive relief application stems from a meeting of the defendant Association held on February 13, 1980, to consider what actions to take in connection with a fray involving the students of Lee High School and McKinley High School during a basketball game the week before at Lee High School. The plaintiff, the News Director for Louisiana Television Broadcasting Corporation, as well as members of the public, was excluded from the meeting. Spain had sought to obtain a temporary restraining order so that he could give news media coverage to the meeting; the restraining order was not granted but he was assigned a hearing on the matter of a preliminary injunction. The Association having completed its meeting before the hearing could be held, Spain amended his petition to seek permanent, as well as preliminary, injunctive relief based on the grounds that the LHSAA intended to hold future meetings as “closed meetings” in violation of the “Open Meetings” Law. After a hearing, the lower court found that the LHSAA was not a “public body” and was thus not subject to the “Open Meetings” Law. Accordingly, the trial court denied *228 Spain the requested injunctive relief, rendering the following “Written Reasons for Judgment”:

“Findings of fact

“1. The Louisiana High School Association is a private, unincorporated voluntary association.
“2. It neither receives nor disburses tax money.
“3. It does not perform or administer any governmental functions.
“4. It is not a creature of the Louisiana Department of Education.
“5. It does not exist by virtue of any act of the Louisiana Legislature.
“6. It is not a ‘public body’ nor does it conduct any public business within the definitions of the Louisiana Constitution and the statutes.
“7. The Louisiana Legislature did not intend that La.R.S. 42:1 et seq. apply to the Louisiana High School Athletic Association.

“Conclusion of Law

“The meetings of the Louisiana High School Athletic Association are not subject to the requirements of the ‘Open Meetings Law.’
“For the above reasons, plaintiff’s case is dismissed at his costs.”
The appellant designates two specifications of error: first, that the lower court erred in concluding that the Association was not a “public body” within the meaning of the “Open Meetings” Law; second, that the court below erred in concluding that the Association was not subject to the requirements of the “Open Meetings” Law. It is suggested by the appellant that the single issue before this Court is whether the Association is a “public body” within the meaning of LSA-R.S. 42:4.2(2) so as to be subject to the “Open Meetings” Law.
The appellee contends that the “Open Meetings” Law does not apply to the LHSAA because the provisions of LSA-R.S. 42:1 et seq., make it clear that it was not the intent of the legislature to apply these statutes to the LHSAA or any other similarly-situated private organization. Rather, it was the legislative intent that the “Open Meetings” Law apply only to public bodies or entities created by the Constitution and laws of the State of Louisiana.
The general rule in this State is that courts will not interfere with the internal affairs of a private voluntary association where its affairs are conducted fairly and honestly. Sanders v. Louisiana High School Athletic Association, 242 So.2d 19 (La.App. 3 Cir. 1970); Marino v. Waters, 220 So.2d 802 (La.App. 1 Cir. 1969). The Courts have specifically applied this rule to the defendant in the instant case, the LHSAA. See Watkins v. Louisiana High School Athletic Association, 301 So.2d 695 (La.App. 3 Cir. 1975); Sanders v. Louisiana High School Athletic Association, supra.
The LHSAA is a private, unincorporated, voluntary organization of some 450 high schools, represented by the member-school principals. About 80% of its members are public schools. In fact, almost all of the public schools in this State which engage in interscholastic athletic sports and activities are members of the Association. The principals, coaches and students of the schools are not members as such, there being no individual memberships. The object of the LHSAA is to handle the interscholastic athletic activities of its member schools.
However, the case at bar is not between the LHSAA and a member school, but is between the LHSAA and a member of the public. It is a grievance presented by one who may be adversely affected by decisions or actions of an association of which he is not a member. While there was a question of a disciplinary rule involved in the instant case, the suit does not involve solely a question of internal affairs of a voluntary association; it involves primarily the question of the applicability of a “freedom of information” or a “right to know” law to a particular voluntary association. Therefore, the LHSAA’s activities are subject to court scrutiny when a litigant contends that the LHSAA is violating state *229 law requiring the holding of open, public meetings. See Dumez v. Louisiana High School Athletic Association, 334 So.2d 494 (La.App. 1 Cir. 1976), writ refused, 337 So.2d 225 (La.1976); Ghabert v. Louisiana High School Athletic Association, 323 So.2d 774 (La.1975).
We now turn to the real issue in the instant case. The essence of the appellant’s case is that the LHSAA is a public body and, hence, is subject to the “Open Meetings” Law.
The term “public body” is defined in the statute, LSA-R.S. 42:4.2(2), as follows:
“ ‘Public body’ means village, town, and city governing authorities; parish governing authorities; school boards, and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph. ‘Public body’ shall not include the legislature.”
The LHSAA does not specifically fit any of the classifications set out in the definitions provision of the statute. It is not a village, town, or city governing authority; it is not a police jury. It is not a school board; it is not a board of levee or port commission, or the board of a publicly-operated utility. It is also not a planning, zoning or airport commission. The question then becomes, is it an “authority” to which policy making, advisory or administrative functions have been delegated by one of the entities listed in the definitions provision of the statute, as the appellant contends? We think not.
When the definition of “public body” is read with the provisions of LSA-R.S. 42:1 and LSA-R.S. 42:4.1 it becomes clear that the term “public body” means an entity which was established by the state constitution, legislative acts, or acts or ordinances of some political subdivision, not an entity such as the LHSAA. LSA-R.S. 42:1 defines “public office” as follows:
“As used in this title, the term ‘public office’ means any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state . . . . ”
Implicit in the definition of “public body” is the meaning that it embraces only governmental entities, not entities in the private sector of our society. This view is consistent with the constitutional provision found in 1974 La.Const. Art. 12 § 3 as follows:
“No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” (Emphasis added.)
LSA-R.S. 42:4.1 declares the intention of the legislature in passing the “Open Meetings” Law, as follows:
“It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally.”
Perhaps the “Open Meetings” Law can be put in proper perspective by reference to the language of the concurring opinion of Mr. Justice Summers of the Louisiana Supreme Court in Reeves v. Orleans Parish School Board, 281 So.2d 719, 723 (La.1973), as follows:
“The public at common law had no right to attend meetings of governmental bodies. In fact, Parliament from earliest times conducted its sessions in secrecy. The iniquitous Star Chamber proceeding had its role in history. It came to be realized in keeping with logic, reason and common sense that full publicity of pro *230 ceedings was an important influence in promoting proper conduct of public officials. In time the public meeting has come to be recognized as a fundamental aspect of effective government and an informed electorate.
“In an attempt to require governmental bodies to conduct their affairs openly, public meeting statutes have been enacted. The passage of open meeting statutes is one of the achievements of a broader campaign, spearheaded primarily by the American press, to promote freedom of information. The freedom-of-information campaign is based on the argument that public knowledge of the considerations upon which governmental action is based, as well as knowledge of the final action taken, is an essential component of the American process.” (Footnotes omitted)
In enacting the “Open Meetings” Law the Legislature was concerned with citizens (the public) being advised and aware of the performance or actions of public officials and their deliberations and decisions concerning “public policy.” Public officials are those persons defined in LSA-R.S. 42:1 as holding public office, which means an office or position established by the Constitution or laws of this State. When these two provisions are read together with the definition of public body contained in LSA-R.S. 42:4.2(2), it is clear that the Legislature intended the “Open Meetings” Law to apply only to those entities which were established by the Constitution and laws of this State. While it is true, that LSA-R.S. 42:4.1 states that the law should be construed liberally, the law can be “construed liberally” only insofar as it applies to the entities within its intended coverage. There was never any intention for the Act to apply to a voluntary association, such as the LHSAA.
Appellants rely on Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1 Cir. 1978), to show that the LHSAA is a “public body.” The Seghers case held that the entity involved, Community Advancement, Inc., was a “public body” within the meaning of the “Open Meetings” Law. The defendant had contended the “Open Meetings Act” did not apply to it because it was a private non-profit corporation. The evidence established that Community Advancement, Inc., had a non-profit corporation charter from the State of Louisiana; however, the Court looked not to the legal status as defined in the non-profit corporation charter, but to who created the corporation and why it was created. The particular corporation had been organized for the purpose of administering a governmental anti-poverty program. It was supported almost entirely from tax funds appropriated by either the federal, state or local government. It had been “sponsored” by the East Baton Rouge Council, and had been designated by those governing authorities as the agency to administer the poverty program, a governmental function.
The facts are different in the present case. The LHSAA is not established by the Constitution or the laws of the State or of any parish or municipality. It is not and was not sponsored by any parish or city council, or by the Department of Education, or any school board. It promotes and regulates a special concern of its members, i. e., interscholastic athletic competition. The fact that the LHSAA provides this non-governmental service to public high schools (along with providing the same service to private high schools) does not make it a “public body,” any more than any private corporation becomes a public body merely by providing a non-governmental service to a public high school.
The factors which the Court in Seghers considered made the private nonprofit corporation a “public body or authority within the intendment of the statute” were (1) the corporation was organized to perform and has performed a governmental function; (2) the corporation was supported almost exclusively by tax derived funds; and (3) the corporation was able to and did set policy in both the administration and distribution of tax derived funds. None of those factors are present in the instant case. The LHSAA was not organized to perform *231 and does not perform any governmental function; it promotes and regulates inter-school sports competitions on the high school level in this State. The LHSAA does not receive or disburse tax derived funds; the record supports the trial judge’s findings that the LHSAA does not receive or disburse tax derived funds. The LHSAA is supported by “dues”, and the dues paid by the member schools come from athletic funds derived from the gate receipts of the various athletic contests. The Association receives no money derived from taxes of any kind. The Association sets no policy with regard to the administration or disbursement of tax derived funds and no policy with regard to any governmental function.
In view of our conclusion set out above that the Louisiana High School Athletic Association is not a “public body” within the intendment of LSA-R.S. 42:4.2(2) and is not subject to the “Open Meetings” Law, we are not called upon to determine the constitutionality of the Act.
For the reasons assigned, the judgment of the District Court is affirmed at the appellant’s costs.
AFFIRMED.