398 So.2d 1386 (1981)
John M. SPAIN
v.
LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION.
No. 80-C-2712.
Supreme Court of Louisiana.
May 18, 1981.
*1387 W. Luther Wilson of Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiff-applicant.
R. Bradley Lewis, Charles M. Hughes, Talley, Anthony, Hughes & Knight, Bogalusa, for defendant-respondent.
BLANCHE, Justice.
The sole issue presented by this case is the applicability of the Louisiana Open Meetings Law to meetings of the Louisiana High School Athletic Association (LHSAA). R.S. 42:4.1 et. seq. Both the district court and the court of appeal resolved the issue in the negative. 393 So.2d 226. This Court issued a writ of certiorari to consider the correctness of their determinations. 395 So.2d 1354. We reverse.
Revised Statute 42:5(A) provides that every "meeting" of any "public body" shall be open to the public unless excepted by law. A "meeting" is an assembly of a quorum of the public body to deliberate or act on a matter within the body's jurisdiction. R.S. 42:4.2(A)(1). "Public body" is defined, for purposes of the Open Meetings Law, as follows:
"`Public body' means village, town, and city governing authorities; parish governing authorities; school boards, and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph. `Public body' shall not include the legislature." R.S. 42:4.2(A)(2).
The LHSAA contends that it cannot be categorized as any body deemed "public" by the act, and therefore, it is not subject to the legislation, while the plaintiff asserts, to the contrary, that the LHSAA is a committee or subcommittee of the several school boards of the state.
The LHSAA is a statewide association of approximately 450 public and private high schools. Each member school is represented by its principal. The primary governing body of the association between annual meetings is an executive committee, which consists of persons chosen by member schools, designated educational and athletic associations, and even the State Superintendent of Education and State Department of Education. The executive committee selects officers from its members and hires an administrative commissioner with broad regulatory powers. The commissioner in turn appoints a sportsmanship committee, of which he can also be a member, in order to investigate charges of poor sportsmanship and impose sanctions when necessary.
The cornerstones of the association are its constitution and by-laws. Article II of the LHSAA constitution states that the object of the association "... shall be to promote, regulate and direct the interscholastic athletic activities of the high schools of Louisiana...", for the protection of the interests of the participants in those activities. More specifically, one purpose of the LHSAA is to "... assist, advise and aid schools in organizing and conducting interscholastic sports." In effectuating the primary objective of the association, the constitution and by-laws provide mandatory regulations covering almost every aspect of high school interscholastic sports, including, but not limited to: membership eligibility; classification of member schools by size and location; rules for the games of football, basketball, *1388 baseball, track, golf, gymnastics, volleyball, tennis, swimming, soccer and wrestling; rules of eligibility and qualifications for individuals desiring to participate in sports, including scholastic course and grade point requirements for athletes; minimum qualifications for coaches; transfer of athlete rules; dues, fees and other services exacted by the association from members; and penalties and sanctions against individual athletes and member schools for rules violations.
Counsel for the LHSAA is quick to point out that the rules of the association are only mandatory to the extent that schools choose to become members and abide by them. He adds that the ultimate power of the association is expulsion of the member rather than compulsion exercised by a sovereign. However, this fails to give weight to the enormous de facto power exerted by the association. Frank Spruiell, who is listed in the 1979-80 LHSAA Official Handbook as the Commissioner and Secretary-Treasurer of the association, testified at trial that, to his knowledge, every accredited public high school engaged in athletic competition in this state is a member of the association. He also agreed that "a number" of private high schools belong to the association and collectively amount to about 20 percent of the association's membership. This testimony alone underscores the devastating effect of failing to join or failing to abide by a regulation or sanction imposed by the association. Non-membership is almost tantamount to obscurity in athletics. Further, Thomas McCoin, the Director of Athletics for the East Baton Rouge Parish School System, testified that he felt that schools agreed by joining the association that they would abide by decisions handed down by the LHSAA. He also testified that he once abided by a decision of the LHSAA which required him to make available for a basketball game a school gym under his administrative control. At the very least, this testimony indicates that a public employee of one school system considers himself "morally obligated" to abide by the regulations of the association. When coupled with the accumulated clout of the schools that adhere to the association's rules and the comprehensiveness of its regulations, the awesome power of the association over schools becomes evident.
The constitution of the LHSAA spells out the method by which the association is funded.[1] The association is financed by membership dues, a percentage of gate receipts for certain specified events, and entry fees for participating in sports for championship honors. Regarding the entry fees, all checks are required to be school *1389 checks and made payable to the association, although Mr. Spruiell testified that "We'll take any check that's good."
Aside from money flowing directly to the association by and in behalf of member schools, the secretary and staff of the LHSAA are legislatively defined as "teachers" for the purpose of inclusion in the Teachers' Retirement System of Louisiana (TRSLA). R.S. 17:571(23), 591(A). Thus, those persons connected with the association reap the same tangible and intangible benefits extended to public employees of institutions under the control of the State Board of Elementary and Secondary Education.
Against the scenario created by the constitution and operation of the LHSAA, the function of government with regard to high school athletics must be examined in order to resolve the issue at hand.
The provision of education to the people of Louisiana is regarded as a governmental responsibility. The legislature must provide for education and is charged with establishing and maintaining a public educational system. La.Const. Art. VIII, § 1. The State Board of Elementary and Secondary Education (BESE) must supervise and control the public elementary and secondary schools and establish minimum requirements for private schools, while its administrative head, the State Superintendent of Education, must implement its policies. La.Const. Art. VIII, §§ 2-4. Local control and financing of the public schools is exercised by the parish school boards. La.Const. Art. VIII, §§ 3(A), 9; R.S. 17:81 et seq..
While the fielding of athletic teams is nowhere expressly designated as a responsibility of our public school system, this Court, to paraphrase our trial brother, is belaboring the obvious in stating that high school athletics serves a useful educational purpose as an adjunct to classroom instruction. See Dumez v. La. High School Athletic Assn., 334 So.2d 494 (La.App., 1st Cir. 1976). As such, it is within the regulatory scope of government. It is equally obvious that public schools are, in fact, fielding interscholastic athletic teams which represent their respective schools with at least the implied consent of state and local school governing bodies. School boards regularly pay coaches salaries and allow schools to dispose of earned gate receipts as they see fit[2] as well as maintain stadia and other physical facilities. The legislature has enacted statutes allowing parish and city school boards to purchase school buses for school athletic departments and provide hospitalization and bodily injury insurance for members of school sponsored teams without regard to fault, as well as one including LHSAA staff members in the TRSLA, discussed earlier. R.S. 17:158.1, 169. Even the association recognizes its connection with the educational system by providing in its constitution that the executive committee include within its membership people appointed by the State Superintendent of Education, the State Department of Education, the Executive Committee of the State School Boards Association, and members of the State Superintendents' Association.
Public school principals are employees of their respective school boards. The school boards are subject to state school laws and the regulations of the Board of Elementary and Secondary Education. R.S. 17:81. BESE is a "state board" within the definition of "public body" as stated in the Open Meetings Law, and school boards and their committees and subcommittees are expressly subject to the act. R.S. 42:4.2(A)(2), 5(A). Principals are not, most probably because their role is perceived as that of an individual administrator charged with the implementation of educational policies and regulations at a single institution. Yet, an assemblage of principals established as an *1390 official committee or subcommittee of a school board or BESE would be literally subject to the Open Meetings Law regardless of its function. The logical question flowing from this, however, is whether or not an assemblage of principals acting without formal composition as a committee or subcommittee can, for certain purposes, be considered as one.
Revised Statute 42:4.1, dealing with interpretation of the Open Meetings Law, provides:
"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally."
While the term "public officials" is not defined in the Open Meetings Law, the term is an obvious reference to the term "public officers" found in R.S. 42:1, which term includes members of boards or commissions established by the constitution or laws of this state. Since BESE and school board members are public officers and the boards are public bodies, R.S. 42:4.1 is clearly designed to insure that citizens be permitted to observe their deliberations. Furthermore, R.S. 42:5 provides that each public body shall be prohibited from utilizing any means to circumvent the intent of the act. To protect these goals and follow the mandate of the legislature, this Court must construe the terms "committee" and "subcommittee" liberally for the purposes of this act.
The LHSAA performs a function which is, by law, entrusted to the various bodies established for the regulation of public education. It is funded by public money earned by state schools at athletic events.[3] It has established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves with regard to athletic and academic endeavors, all with the acquiescence and implied blessing of the legislature, Board of Elementary and Secondary Education, Superintendent of Education, and local school boards. See Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App., 1st Cir. 1978). Equally important is the degree of connexity between the regulatory functions of the LHSAA and the regulatory functions of a particular "public body" found in R.S. 42:4.2(A)(2). Here the connexity is close, since LHSAA performs a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.
Viewed in this light, the LHSAA and its official committees and subcommittees in their present form do constitute collective committees or subcommittees of the parish school boards or State Board of Elementary and Secondary Education for the purposes of the Open Meetings Law.
The LHSAA has cited a plethora of cases in which courts have stated that the association is a private, voluntary association.[4] It is important to note, however, that this body of law did not deal with a positive legislative pronouncement which defined *1391 the conditions under which an entity must be deemed "public" for a limited purpose. Since such a pronouncement is present in this case, the appellation "private, voluntary association" cannot preclude the application of the Open Meetings Law. See Seghers v. Community Advancement, Inc., supra.
Procedurally, this case arose when an individual was denied access without reason[5] to a meeting of the LHSAA sportsmanship committee. Suit was brought for a mandatory injunction requiring the association to comply with the provisions of R.S. 42:4.1 et seq., Both lower courts denied relief since they were of the opinion that the LHSAA was not a "public body". However, in light of the present decision of this Court, it was error for the lower courts to deny the plaintiff the relief sought. Accordingly, the Louisiana High School Athletic Association is ordered to comply with the provisions of the Louisiana Open Meetings Law, R.S. 42:4.1 et seq..
REVERSED AND RENDERED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice, dissenting.
I consider the Louisiana High School Athletic Association (LHSAA) to be a private, unincorporated, voluntary association. As such, it is not a "Public body" as defined in the Open Meetings Law and therefore not subject to its provisions. Accordingly, I respectfully dissent.
NOTES
[1] Art. X, § 1.

"The Money for Financing the Association Shall Be Derived From:
"(1) Membership dues.
"(2) Ten percent (10%) of the gross receipts from all football jamborees after the fees for officials have been deducted and ten percent (10%) of the gross receipts from all play-offs, beginning with the bi-district play and through the state championship football games, bowl games and post season games shall be paid to the Association.
"(3) Five percent (5%) of the gross receipts from all approved invitational basketball tournaments after the fees for officials have been deducted, and five percent (5%) of the gross receipts from all basketball play-offs, beginning with the bi-district play on through the girls' state basketball tournaments and boys' quarter finals shall be paid to the Association.
"(4) The entry fees for participation in the following sports for championship honors are as listed below: ALL CHECKS ARE TO BE SCHOOL CHECKS AND MADE PAYABLE TO THE LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION."
* * * * * *
"(5) The receipts of the Top Twenty State Basketball Tournament, after expenses.
"(6) Five percent (5%) of the gross receipts of the Sweet Sixteen State Basketball Tournament.
"NOTE: Playoff games are defined as all games after the district champion has been decided.
"A financial report, names of participating schools and outcome of games (completed brackets in case of basketball tournaments), must be submitted in the Commissioner's office within 21 days of the contest accompanied by a check for the amount due the L.H.S.A.A."
The foregoing also serves as a representative illustration of the comprehensiveness of the 90 pages of regulations found in the 1979-80 Official Handbook of the LHSAA.
[2] For example, Mr. McCoin testified that approximately 275 coaches in East Baton Rouge Parish are paid coaching salaries by the School Board in addition to their regular teaching salaries. He also testified that the athletic programs in the schools under his supervision are funded by gate receipts, and that the local school board had decided that each school could retain the gate receipts it earned.
[3] See Bank of Winnfield v. Brumfield, 11 La. App. 647, 124 So. 628 (2nd Cir. 1929).
[4] LHSAA has been recognized as a private, unincorporated, voluntary association in the following cases: Chabert v. Louisiana High School Athletic Association, 323 So.2d 774 (La. 1975); Marino v. Waters, 220 So.2d 802 (La. App., 1st Cir. 1969); Sanders v. Louisiana High School Athletic Association, 242 So.2d 19 (La. App., 3rd Cir. 1970); David v. Louisiana High School Athletic Association, 244 So.2d 292 (La. App., 1st Cir. 1971); Watkins v. Louisiana High School Athletic Association, 301 So.2d 695 (La. App., 3rd Cir. 1974); and Walsh v. Louisiana High School Athletic Association, 616 F.2d 152 (5th Cir. 1980), cert. den. ___ U.S. ___, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981).

We note, however, that the actions of the organization have been deemed "state action" for purposes of compliance with the 14th Amendment of the United States Constitution. Dumez v. La. High School Athletic Association, supra; Walsh v. Louisiana High School Athletic Association, supra; Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (5th Cir. 1968).
[5] R.S. 42:6.1 provides exceptions to the Open Meetings Law. In the present case, plaintiff was denied access to a meeting because the LHSAA asserted that it was not subject to the act. It is possible, however, that plaintiff still might have been properly denied access to the meeting in question if the association, pursuant to the act, had claimed an exception to the open meeting requirement.