GROVER L. COVINGTON, Chief Judge.
Plaintiff-appellant, A.J. Bodker, Jr., is seeking injunctive relief prohibiting the defendant, the Louisiana High School Athletic Association, from implementing a plan which reclassifies its member public and private high schools across the state for purposes of football competition. A motion for a directed verdict in favor of the defendant, dismissing plaintiffs claims and denying injunctive relief, was granted by the trial court, whereupon plaintiff perfected this suspensive appeal. Defendant answered the appeal, asking for damages for a frivolous appeal, and also filed a motion to dismiss the appeal. For the reasons hereafter stated, we reverse and remand for consideration in accordance with the views expressed.
FACTUAL SUMMARY
The basic facts in the instant case are not in dispute. Plaintiff-appellant is the principal of Ponchatoula High School, and in that capacity, represents his school in the Louisiana High School Athletic Association [“the Association”]. In October of 1984, he was notified, as were all other member principals, that the Reclassification Committee of the Association proposed to change the current classification system of member schools regarding sports competition, based upon the student enrollment of each school. Since appellant objected to the proposed change, he made known his opposition to the Association on several different occasions and in a number of different ways: by a form prepared and circulated by the Association in order to obtain its members’ views; by memorandum addressed to the commissioner of the Association; by appearances before the Reclassification Committee and Executive Committee (the latter with legal counsel); and by requesting that two alternative motions be placed on the agenda of the annual general meeting of the Association, which was held in January, 1985.
Plaintiff-appellant’s motions were not placed on the agenda for the January meeting, nor did the committees with which he had contact take the requested formal action upon his opposition to the plan, other than to note same. Rather, the position taken by the Association, through its committees, was that the plan proposed by the Reclassification Committee was final, and no vote of the general assembly of the Association was required. This suit for injunctive relief resulted. The thrust of *943 this appeal is that, since the classification scheme of the Association is contained in its Constitution, any change in it must be in accordance with the provisions of the constitution detailing constitutional amendment by the members of the Association, rather than by unilateral action of the Reclassification Committee.
According to the Constitution of the Association, member schools are classified for purposes of administration by the Association and for sports competition by grouping the schools in units or classes. This grouping is based upon total student enrollment according to records of registration of member schools at the close of the first month of the school year.[2]
However, the classes have greater significance for athletic competition than they do for administration, which could have been served by any arbitrary scheme. The classes have been established so that no school is grouped with another that has more than twice the total enrollment of the first.
Evidence presented at trial suggests that the classification scheme in effect is examined and changed, called reclassification, when school enrollments significantly change, whether as an increase or decrease. For example, a school in Class AAA, which has an upper limit on enrollment of 1250 students, may need to be reclassified as Class AAAA school if its enrollment increases from 1140 to 1300 students. If a significant number of schools in one or more classes have increases or decreases in enrollment, the entire classification scheme may need to be changed.
Schools are also grouped within each class into districts, which have a geographically determined basis; these are likewise changed as circumstances warrant.
I.
Plaintiff-appellant’s first assignment of error is that the trial court erred in failing to find that the Association is a quasi-public institution whose action constitutes state action.
In dealing preliminarily with exceptions of no right of action, no cause of action, and lack of procedural capacity, which were filed by defendant-appellee, the trial judge stated:
... [T]he actions of the [Association in regulating the public schools insofar as their athletic activities are concerned ... constitutes state action. I think that is clear from the jurisprudence. Therefore, the Association’s activities are subject to *944 court scrutiny when a litigant contends that he is denied equal protection or due process of law ...
However, in his oral reasons for judgment in favor of defendant-appellee, he prefaced his ruling with these remarks:
... I would note at the outset that it is essential to remember in this matter that the Louisiana State High School Athletic Association is a voluntary non-profit organization ... The general rule as reflected in our jurisprudence is that the courts will not interfere with the internal affairs of a private association except in those cases where the affairs and proceedings have not been conducted fairly and honestly or in cases of fraud, lack of jurisdiction, the invasion of property, or pecuniary rights, or when action complained of is capricious, arbitrary or unjustly discriminatory.
The trial court’s characterization of the Association’s actions as state action in the preliminary stage of the hearing was the correct one, rather than that given in the reasons for judgment.
Our Supreme Court considered the nature of the Association as a public or private entity in Spain v. Louisiana High School Athletic Association, 398 So.2d 1386 (La.1981), in which it was presented with the question whether the Association [LHSAA], its committees, and subcommittees constituted a public body within the meaning of R.S. 42:4.1 et seq., the Open Meetings Law. After a concise but thorough examination of the structure, purpose, and funding of the Association, the Court stated:
The LHSAA performs a function which is, by law, entrusted to the various bodies established for the regulation of public education. It is funded by public money earned by state schools at athletic events. It has established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves with regard to athletic and academic endeavors, all with the acquiescence and implied blessing of the legislature, Board of Elementary and Secondary Education, Superintendent of Education and local school boards. (Citation omitted) Equally important is the degree of connexity between the regulatory functions of the LHSAA, and the regulatory functions of a particular “public body” found in R.S. 42:4.2(A)(2). Here the connexity is close, since LHSAA performs a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.
Viewed in this light, the LHSAA and its official committees and subcommittees in their present form do constitute collective committees or subcommittees of the parish school boards or State Board of Elementary and Secondary Education for the purposes of the Open Meetings Law. 398 So.2d at 1390. (Footnotes omitted; emphasis ours.)
Admittedly, we are not faced here with a specific legislative pronouncement under which an entity is deemed public for a limited purpose, as in Spain. We are, however, faced with a situation in which actions taken by the Association, “with the acquiescence and implied blessing of the legislature, Board of Elementary and Secondary Education, Superintendent of Education, and local school boards” [Spain, supra] will affect more than 450 schools across the state. These actions are, moreover, within the realm of control of those governmental entities established to regulate public education.
The analysis and rationale of Spain are applicable in the instant case. The Association’s actions in establishing its member schools’ athletic competition scheme on a statewide level constitute state action.
II.
The second assignment of error by plaintiff-appellant is the failure of the trial court to find that the Association’s failure to follow the provisions of its own Constitution constitutes a violation of the due process and equal protection clauses.
*945 Because we find that the Association’s actions in the present case constitute state action, it must of necessity follow that the Association is subject to certain due process requirements, as is any other entity capable of state action. Arguably, these requirements will not be the same as in the case of an elected or appointed governmental body established by our Constitution or statutes. It is not for this court to delineate those requirements here. However, when the Association has adopted certain rules in its own Constitution and By-laws, which set forth certain procedural requirements, “minimum” due process requires the Association to abide by its own rules.
In the instant case, two apparently conflicting provisions of the Association’s Constitution are at issue. Article III, Section 2, sets forth the classification scheme under which the high schools were grouped for purposes of athletic competition until the recent attempted change which initiated this suit. The first of the two provisions in question is Subsection 3 of Section 2 of Article III, quoted previously.
Counsel for plaintiff-appellant contends that this provision authorizes the Reclassification Committee to take final action in implementation and administration of the classification scheme but not to amend the scheme, which is itself a constitutional provision. Counsel for defendant-appellee, on the other hand, contends that this provision authorizes the Reclassification Committee to change the scheme without the vote of the members of the Association, and that the provision for amendment of the Constitution included within Article IX,[3] does not apply in this situation.
The scheme of classification is in the Constitution of the Association, not in a handbook or any other publication of the Association; thus any attempt to change the scheme must be handled in the same fashion as a change in any other section or subsection of the Constitution, i.e. by vote of the members of the Association pursuant to Article IX, so as to comply with procedural due process.
We find provisions of Subsection 3 inapplicable to that portion of the classification scheme that is set forth in Section 2; they must be read to apply to those details of the scheme not within the constitution, such as arrangement of the districts within each class.
III.
The third assignment of error by plaintiff-appellant is that the trial court erred in finding that if the Association had been “some other type of association,” the relief sought could have been granted. In view of our treatment of the other assigments of error, no discussion of this assignment is necessary.
IV.
Plaintiff-appellant assigns as his fourth assignment of error the failure of the trial court to find that the state action of the Association in deprivation of the fundamental rights of its member schools constitutes sufficient irreparable injury to justify the granting of injunctive relief, or whether specific proof of some additional irreparable injury must be offered.
In his oral reasons for judgment, the trial judge stated,
... [I]t is the opinion of the court that the plaintiff has failed to show the requisite irreparable injury such as to justify the enjoining of the subject reclassification plan. (Tr. 98).
This opinion was predicated on the trial judge’s final evaluation, as stated previously, that the Association is a voluntary, nonprofit, private association whose actions do not constitute state action.
*946 Based on our finding that the Association’s actions in this area do constitute state action sufficient to bring in certain due process requirements, which were not met, we also find that plaintiff-appellant has established sufficient irreparable injury to justify granting injunctive relief.
Under the factors enumerated in Spain, supra — the magnitude of effect the pronouncements of the Association have across the state, the close connexity of the Association’s function with that of those governmental entities which regulate public education and the school systems, the apparent recognition and acceptance by various state and local governing bodies and agencies of the work of the Association, the public nature of both funding and staff of the Association — it is clear that the Association enjoys an undeniable authority within the area of its activity. In view of this de facto authority, the Association may not claim immunity from judicial scrutiny or intervention, and thus that it is unaccountable for its actions, based on its status as an entity outside the hierarchy of government. This posture would leave litigants who contend their constitutional rights have been violated by such an entity with no recourse beyond the entity in question.
V.
It is unnecessary to discuss the fifth assignment of error by plaintiff-appellant, dealing with the substantive merits of the proposed reclassification scheme, in view of our reasons for reversal and remand as stated above.
VI.
However, it is necessary to consider the position of defendant-appellee, who answered this appeal by alleging the trial court was in error in overruling the exceptions of no right of action, no cause of action, and lack of procedural capacity, and requested damages for a frivolous appeal.
We find that the trial court was correct in overruling these exceptions. Regarding plaintiff-appellant’s capacity in this suit, which he filed “individually and as principal of Ponchatoula High School,” we hold that he has the capacity to file this suit. The Constitution of the Association specifically provides in Article III, Section 1: “The principal of each school, in matters pertaining to the athletic relations of his school, is responsible to this Association. All dealings with the school shall be through him.” (Emphasis ours.)
Thus, by instituting suit in this fashion, plaintiff-appellant complied with the rules of the Association, which now argues that the Tangipahoa Parish School Board is the proper party to sue on behalf of the school.
In ordinary instances, there is no question but that the School Board is the proper party in a lawsuit on behalf of one of its schools. However, this is not an ordinary situation. Here, the authorized representative of the school in the Association is asking for injunctive relief against the Association, arising out of an alleged injury suffered as a member, from action of the Association as a de facto governing authority. As the trial court correctly pointed out, the School Board may represent several schools, who might take differing positions in these instances, depending on whether they were benefitted or harmed by the reclassification proposal. Thus, the School Board could be in the position of having to represent diverse views in one and the same case.
Since our discussion of plaintiff-appellant’s assignments of error adequately encompasses, the question of a cause of action, no additional discussion is necessary here. Defendant-appellee is obviously not entitled to the damages requested for a frivolous appeal. Moreover, defendant’s motion to dismiss this appeal is denied, because the reasons urged by defendant were correctly dealt with by the trial court.
VII.
At the hearing in the trial court, defendant-appellee did not have the opportunity to *947 present its testimony and evidence, since the trial court granted its motion for a directed verdict. Therefore, we reverse and remand this matter to the trial court to allow the defendant to present its case, and for determination by the trial court of this matter in accordance with the views herein expressed. Pending final determination of this case, and pursuant to La.C.C.P. art. 2164, the Association is stayed from implementing the proposed reclassification and redistricting plan.
Costs are to await final disposition.
REVERSED AND REMANDED.

. The classification scheme of the Association is contained in Article III of the Constitution, which is entitled "Membership and Classification,” Section 2, as follows:
Section 2. Classification and Dues. (This applied to all schools, both boys and girls.)
Class Enrollment Dues
AAAA 1250 and over $300.00
AAA 625-1249.9 $225.00
AA 300.0-624.9 $150.00
A 299.9 and under football schools $112.50
B 117.1-299.9 (non-football) $ 75.00
C 117.0 and under (non-football) $ 60.00
1. This reclassification was adopted for the 1984-85 school session.
2. Changes in classification and districting shall be made at regular two-year intervals only. Classification of member school will be based on the total enrollment in grades 9 through 12, averaging the last two October 1 Annual Reports to the State Department of Education. For schools with an all-boy or all-girl enrollment or with two (2) high school grades only, the figures will be doubled. For schools with three (3) high school grades only; that is, 10th 11th and 12th grades, one-third (½) of the enrollment will be added. 3. The reclassification and redistricting plan as submitted by the two elected representatives from each classification shall be final after the reclassification committee has submitted a plan and it has been mailed to each member school and in turn each school has had the opportunity to respond to the plan in writing. Then all changes will be mailed to each member school, and any school dissenting with the plan shall have an opportunity to appear before the committee before the final adoption by the reclassification and redistricting committee’s plan becomes final. Classification and districting may be changed only on odd years and will be based on the average of the two previous years’ enrollment as shown by the schools’ October 1 Annual Reports to the State Department of Education.

. The Constitution and By-Laws of the Louisiana High School Athletic Association may be amended at any regular meeting of the Association by the majority votes of those delegates present and voting. All business coming before the general assembly will be decided by majority vote.