Dear Representative Hardy:
You have requested an opinion of the Attorney General, inquiring whether the Louisiana High School Athletic Association (LHSAA) is subject to Louisiana laws governing the legislative audit of state and local bodies and the Louisiana Code of Governmental Ethics.
 LEGISLATIVE AUDIT LAWS
The legislative auditor's office, constitutionally created and placed within the Legislative Branch, is "responsible solely to the legislature," serves "as a fiscal advisor to it" and performs "the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions."[1] La.R.S. 24:513 sets forth the powers and duties of the legislative auditor and provides in pertinent part that:
[T]he legislative auditor shall have authority to compile financial statements and to examine, audit, or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 11:173(A), municipalities, and all other public or quasi public agencies or bodies, hereinafter collectively referred to as the "auditee".
LHSAA may be subject to the Louisiana laws governing the legislative audit of state and local bodies if it qualifies as a public or quasi public entity within the meaning of La.R.S. 24:513. *Page 2 
A quasi public agency or body pursuant to La.R.S. 24:513(A)(1)(b) is defined in pertinent part as follows:
(v) Any organization, either not-for-profit or for profit, which is subject to the open meetings law and derives a portion of its income from payments received from any public agency or body.
For reasons more fully explained below, it is the opinion of this Office that LHSAA is a quasi public entity pursuant to La.R.S. 24:513(A)(1)(b)(v) and is subject to the Louisiana laws governing the legislative audit of state and local bodies as limited by La.R.S. 24:513(J)(4).
 LHSAA
In October of 1920, a group of high school principals met in Baton Rouge, Louisiana to discuss ways to better regulate and develop the high school interscholastic athletic program. This meeting led to the formation of LHSAA. LHSAA is a not-for-profit organization with the objective to promote, regulate, and direct interscholastic activities of Louisiana High Schools that are members of the Association. The association is vitally interested in the welfare of every boy and girl participating in its athletic contests, and it is for the protection of their interests that the association operates. As explained more completely below, LHSAA is a quasi-public entity as defined by La.R.S. 24:513 (A)(1)(b)(v) because it is a not-for-profit organization that is subject to the open meetings law and derives a portion of its income from payments received from public agencies or bodies.
In the case of Spain v. LHSAA, 398 So.2d 1386 (La. 1981), the Supreme Court determined that LHSAA a private, unincorporated voluntary association, was a "public body"[2] as defined by the Open Meetings Statute, La.R.S. 42:4.2(A)(2) and that LHSAA was subject to the open meetings law. Under the Open Meetings Law, the definition of public body consists of the following: *Page 3 
"Public body" means village, town, and city governing authorities; parish governing authorities; school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph.
See La.R.S. 42:4.2(A)(2).
Even though LHSAA had relied on cases in which it had been held to be a private, voluntary association, the Supreme Court distinguished these cases by stating that "this body of law did not deal with a positive legislative pronouncement which defined the conditions under which an entity must be deemed `public' for a limited purpose." Spain, 398 So.2d at 1390-91. Although membership in LHSAA was not mandatory, but entirely voluntary, the Supreme Court noted that membership in LHSAA was critical to the viability of a school's athletic program, and no school would choose to not become a member if it. The court reasoned as follows:
The LHSAA performs a function which is, by law, entrusted to the various bodies established for the regulation of public education. It is funded by public money earned by state schools at athletic events. It has established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves with regard to athletic and academic endeavors, all with the acquiescence and implied blessing of the legislature, Board of Elementary and Secondary Education, Superintendent of Education, and local school boards. See Seghers v. Community Advancement, Inc., 357 So.2d 626 (La.App. 1st Cir. 1978). Equally important is the degree of connexity between the regulatory functions of the LHSAA and the regulatory functions of a particular "public body" found in R.S. 42:4.2(A)(2). Here the connexity is close, since LHSAA performs a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.[3]
Because LHSAA performed a policymaking, advisory and administrative function in an area within the primary control of public bodies listed in the Open Meetings Law, the Supreme Court concluded that "LHSAA and its official committees and subcommittees in their present form do constitute collective committees or subcommittees for the parish school boards or State Board of Elementary and Secondary Education [BESE] for the purposes of the Open Meetings Law." Spain, 398 So.2d at 1390. *Page 4 
Also important to the determination that LHSAA is quasi public under La.R.S. 24:513 is that it derives a portion of its income from payments received from public agencies or bodies. The Supreme Court discussed sources of LHSAA's financing and the composition of LHSAA's staff in the Spain case, as outlined below.
The money for financing for LHSAA was derived from membership dues (80% of the membership was public schools and 20% private schools), a percentage of gate receipts from sporting events, and entry fees for participation in sports championship honors. Spain, 398 So.2d 1388. By rule, fees were required to be paid with a school check (but the commissioner testified that they would "take any check that was good"). Spain, 398 So.2d at 1388-89. Furthermore, the staff of the LHSAA were defined as teachers and were included in the Teachers' Retirement System of Louisiana. Spain, 398 So.2d at 1389.
PIAL, ___ So.3d ___ (discussing Spain, 398 So.2d at 1388-89).
No facts were provided to our office which provide us with the exact breakdown of the percentage of financing derived from membership of the public schools or other public bodies. However, a review of the LHSAA Constitution, Article 10, makes it clear that the sources of financing of LHSAA include but are not limited to the following: membership dues of the schools; percentages of gross ticket receipts of football jamborees, football playoff games, football bowl games, basketball jamborees, basketball invitational tournaments, basketball playoffs, and soccer playoffs; building dues; the Girls' State Basketball Tournament; the Boys' State Basketball Tournament; Other LHSAA-Conducted State Championship Events; and Entry Fees for other State Championship Events. Many of these sources of funding constitute income to LHSAA from payments received from public bodies as meant by La.R.S. 24:513 (A)(1)(b)(v).
Because LHSAA qualifies as a quasi public entity as contemplated by La.R.S. 24:513, the audit laws are applicable to LHSAA. However, La.R.S. 24:513(J)(4)(a)[4] goes on to provide that any entity which establishes scholastic rules which are the basis of BESE's *Page 5 
policy required by La.R.S. 17:176[5] is not required to be audited by the legislative auditor. But, Section (b) of this statutory provision provides that the Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council.
In evaluating what is meant by the differing sections of La.R.S. 24:513(J)(4), we must look to basic rules of statutory construction. It is presumed that every word, sentence or provision in a law is intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. State v. Moss, 05-1963, p. 15 (La. 4/4//06), 925 So.2d 1185, 1196; SultanaCorporation v. Jewelers Mutual Insurance Company, 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless if a construction giving force to, and preserving all words, can legitimately be found. Moss, 925 So.2d at 1196; St. MartinParish Police Jury v. Iberville Parish Police Jury,212 La. 886, 33 So.2d 671, 676 (1947); State v. Fontenot,112 La. 628, 36 So. 630, 634 (1904).
Applying the foregoing principles in the instant case, it is the opinion of this office that LHSAA is subject to the Louisiana laws governing the legislative audit of state and local bodies. LHSAA, a quasi public entity, is an entity contemplated by La.R.S. 24:513(J)(4) because as discussed by the Supreme Court in the Spain case, LHSAA and its official committees constitute collective committees or subcommittees for the parish school boards or BESE. While Section (a) of this statutory provision states that LHSAA shall not be required to be audited by the legislative auditor, Section (b) provides that the Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council. Assuming that there has been a finding of cause by the council, LHSAA is subject to having an audit conducted by the legislative auditor. *Page 6 
 GOVERNMENTAL ETHICS LAWS
The Office of the Attorney General does not render opinions on the Code of Governmental Ethics. Any concerns as to the applicability of the ethics laws to LHSAA should be forwarded to the State Board of Ethics, 8401 United Plaza Boulevard, Suite 200, Baton Rouge, Louisiana 70809 for review and resolution.
We hope that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
With Best Regards,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Angelique Duhon Freel Assistant Attorney General
JDC:ADF
[1] La.Const. art. III, § 11.
[2] The Louisiana Supreme Court enumerated four factors in the case of State v. Smith, 357 So.2d 505 (La. 1978), to be used to determine whether an entity is private or public under Louisiana law. The four factors consist of the following: (1) The entity is created by the legislature; (2) The powers are specifically defined by the legislature; (3) The property of the entity belongs to the public; and (4) The entity's functions are exclusively of a public character and performed solely for the public benefit.
In its determination that LHSAA was a public entity for purposes of the Open Meetings law in the Spain case, the Supreme Court did not explicitly examine the Smith factors. It was not necessary to discuss the Smith factors because, as it relates to Open Meetings law, there is clear statutory pronouncement of what type of entity qualifies as a public entity for purposes of Open Meetings Law. Notably, in the recent decision by the Supreme Court in See Property Insurance Association of Louisiana (PIAL) v.Theriot, 09-CC-1152 (La. 3/16/10) ___ So.3d ___,2010 WL 1177440, again, the Supreme Court discussed the decision in the Spain case and did not waiver in its opinion that LHSAA is a public entity for purposes of the Open Meetings Law.
[3] Spain, 398 So.2d at 1390.
[4] La.R.S. 24:513(J)(4) states the following:
(a) Notwithstanding any provision of this Section to the contrary, any entity which establishes scholastic rules which are the basis for the State Board of Elementary and Secondary Education's policy required by R.S. 17:176 to be adhered to by all high schools under the board's jurisdiction shall not be required to be audited by the legislative auditor but shall file an audit with the legislative auditor and the Legislative Audit Advisory Council which has been prepared by an auditing firm which has been approved by the legislative auditor. Such entity shall submit such audit to the legislative auditor and the Legislative Audit Advisory Council.
(b) The Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council.
[5] La.R.S. 17:176 governs extracurricular activities; participation; standards; prohibitions; filming or videotaping, and provides in pertinent part the following:
C. The State Board of Elementary and Secondary Education shall adopt a policy no later than March 31, 1985 which as a minimum shall require that the 1984 Scholastic Rule of the Louisiana High School Athletic Association be adhered to by all high schools under its jurisdiction. The Board is further directed to review the policy of the Association on an annual basis and adopt such rules as are necessary to insure that these minimum standards are maintained or upgraded.
. . . .
F. Notwithstanding any policy, rule, or regulation of the Louisiana High School Athletic Association to the contrary and effective for the 1997-1998 school year and thereafter, no student otherwise eligible to participate in an extracurricular interscholastic athletic activity shall be determined in eligible for or otherwise prohibited from participating in such activity during the student's first year of high school because the student attends a state-approved nonpublic high school that is located outside the attendance zone recognized for such student by the Louisiana High School Athletic Association. . . .