WELCH, J.
| ¡.Plaintiff, James A. Wayne, Sr., appeals a summary judgment entered in favor of defendant, Capital Area Legal Services Corporation (CALSC), dismissing this lawsuit. We reverse and remand.
BACKGROUND
CALSC, domiciled in East Baton Rouge Parish, is a non-profit corporation which provides legal services or legal assistance in non-criminal proceedings or matters to persons financially unable to afford legal assistance or employ attorneys. On March 16, 2007, Mr. Wayne entered into an extension of a prior employment contract and was hired by CALSC to serve as its Executive Director for a period of five years pursuant to a written employment contract. The contract provided that Mr. Wayne’s employment could be terminated for cause at any time and that a hearing to determine whether cause existed would be held before CALSC’s Board of Directors (Board).
On January 11, 2011, the Board held a termination hearing at which Mr. Wayne and his attorney were present and addressed the Board. The minutes of the hearing reflect that Mr. Wayne and staff member Eva Pratt testified. The Board then went into executive session and when it came out of that session, it voted to terminate Mr. Wayne’s employment with seven votes to terminate, six abstentions, and one no vote. At that meeting, four Board members participated by telephone.
On February 25, 2011, Mr. Wayne filed his first lawsuit seeking declaratory, mandamus, and injunctive relief against CALSC, claiming that the Board violated the Louisiana Open Meetings Law, which rendered his termination null and without *105 effect. Specifically, he alleged that the Board violated the Open Meetings Law: (1) by failing to post an agenda; (2) by failing to notify him in writing at least twenty-four hours in advance of the meeting that it intended to go into executive session to discuss his character and/or professional competence; (3) Rby voting to terminate his contract while still in executive session; and (4) because less than a majority of the Board members present at the meeting voted to terminate his employment. Mr. Wayne sought a declaration that all actions taken by the Board at the January 11, 2011 hearing were null and void, that his contract was not validly terminated, that his employment contract was still in effect, that he remained the Executive Director of CALSC, and that he was entitled to all benefits due him under his employment contract. He also sought a writ of mandamus ordering CALSC to reinstate him to his position, injunctive relief prohibiting the Board from enforcing its decision and ordering the Board to award him all benefits due under his employment contract with CALSC, and attorney’s fees.
The Board filed a peremptory exception raising the objection of no cause of action, asserting that the Board is a non-profit corporation and not a public body subject to the Open Meetings Law. The Board also filed a reconventional demand, alleging that Mr. Wayne breached his employment contract by engaging in the outside practice of law during the term of the contract and seeking the return of all salary and other benefits paid to Mr. Wayne by CALSC. CALSC further alleged that Mr. Wayne engaged in multiple violations of its rules and regulations and those of the Legal Services Corporation (LSC). It sought reimbursement from Mr. Wayne for all questioned costs it was required to reimburse to the LSC.[1]
On March 31, 2011, the trial court signed a judgment granting CALSC’s exception of no cause of action and granted Mr. Wayne leave to amend his petition. Mr. Wayne amended his petition to allege that CALSC is a public body |4as defined by the Open Meetings Law and is subject to its provisions. Specifically, Mr. Wayne alleged that for more than fifty years, CALSC and its predecessor have been organized to provide, and have in fact provided, an important governmental function— the administration of legal services to persons unable to afford such services. He further asserted that CALSC has been supported almost exclusively by tax-derived funds and exercises considerable policy making in administering its legal services and programs and in distributing the public funds that it receives. Lastly, Mr. Wayne claimed that CALSC’s own by-laws acknowledge that it is subject to the Open Meetings Law. In the amended petition, Mr. Wayne added three alleged violations of the Open Meetings Law in connection with the January 11, 2011 meeting: (1) the fact that several Board members were not physically present but participated by tele *106 phone; (2) one Board member attempted to vote by proxy; and (3) the Board failed to obtain a quorum to even conduct the meeting. Mr. Wayne claimed that the attempt to vote by proxy and the failure to obtain a quorum also violated the Board’s own by-laws.
On March 31, 2011, the Board held another meeting to discuss Mr. Wayne’s termination. Seventeen board members, including the chair, were present, nine of whom participated in the meeting by telephone. During the meeting, fifteen members of the Board voted to ratify its January 11, 2011 vote to terminate Mr. Wayne’s contract and one member abstained. Thereafter, fifteen members of the Board voted to terminate Mr. Wayne’s contract, and all seventeen members of the Board voted to terminate Mr. Wayne’s contract, effective March 31, 2011, in the event the ratification of the January 11, 2011 termination vote was ineffective.
On April 6, 2011, Mr. Wayne filed a second lawsuit against CALSC, asserting that the March 31, 2011 purported termination hearing was also replete with procedural irregularities in violation of the Open Meetings Law in the following respects: (1) a quorum of the members was not present, as only eight ^members were physically present and eight members improperly cast their votes by telephone; (2) the Board failed to post in the amended agenda that it intended to discuss the pending litigation in executive session; (3) the Board did not go into executive session on the basis of any recognized exception to the Open Meetings Law; and (4) the Board improperly voted during the executive session. Mr. Wayne insisted that the Board’s ratification of its January 11, 2011 vote to terminate his employment contract did not cure any deficiencies in the earlier vote. He sought a judgment declaring all actions taken by the Board at the March 31, 2011 meeting and any action taken by it that day to ratify the January 11, 2011 termination be declared null and void, a writ of mandamus ordering CALSC to reinstate his improperly terminated contract, injunctive relief, and attorney’s fees.
On May 9, 2011, the trial court signed a judgment consolidating Mr. Wayne’s lawsuits. Thereafter, CALSC filed a motion for summary judgment in which it asserted that it is not a public body subject to the Open Meetings Law, but rather, it is a private, non-profit corporation organized pursuant to Louisiana law. It conceded it received tax dollars which are used to support some of its operations, but asserted that the receipt or expenditure of tax dollars was legislatively eliminated as a factor in determining what entities fall within the definition of a “public body” for the purpose of the Open Meetings Law. Accordingly, CALSC argued, there are no genuine issues of material fact with respect to Mr. Wayne’s allegation that CALSC is a public body, and since that status is an essential element of Mr. Wayne’s cause of action, CALSC is entitled to judgment as a matter of law. Alternatively, CALSC argued, even if it was subject to the Open Meetings Law, CALSC’s termination of Mr. Wayne’s employment contract was ratified by a later vote of CALSC’s Board at a meeting held in full compliance with that law, which retroactively cured any nullity of the earlier termination vote. |fiLastly, CALSC urged that the Open Meetings Law does not provide the relief Mr. Wayne seeks and that federal law preempts Louisiana’s Open Meetings Law.
CALSC submitted a statement of undisputed material facts. Therein, CALSC stated that it was incorporated in 1958 by the Baton Rouge Bar Association as the Legal Aid Society of Baton Rouge and that it has always been a private, non-profit *107 corporation. It farther stated that there had been no government involvement in the creation of CALSC and that CALSC has never been sponsored by any resolution, nor has it been designated as an “agency” by any political subdivision. The majority of CALSC’s operations are funded by grants awarded by the LSC, a nonprofit corporation created pursuant to an act of Congress. When applying for grants from LSC, as a condition of receiving such grants, CALSC is required to comply with federal regulations enacted pursuant to the Legal Services Corporation Act governing recipient organizations, including qualification of clients for CALSC’s indigent legal services, how funds are used for CALSC’s operations, Board composition, record keeping, hiring and termination of staff attorneys, and other related matters as to which CALSC has no discretion. CALSC’s compliance with federal regulations in its use of grant funds is subject to audit by the federal Inspector General that can result in the requirement that CALSC pay back funds for expenditures not in compliance with federal regulations. CALSC also receives a portion of its operating funds from the Louisiana Bar Foundation’s IOLTA and Children in Need of Care programs and from private sources of funding, but must still comply with LSC regulations regarding its use of those funds. CALSC receives a small portion of its operating funds from the State of Louisiana and various parish and municipal political subdivisions within its twelve-parish service area. CALSC further claimed that it is undisputed that it is not a town, city, or parish governing authority, board, or commission, or an authority of any parish, municipality, special district, the state, |7or any political subdivision thereof and that it does not possess policy making, advisory, or administrative functions of any of those listed entities.
The evidence submitted by CALSC in support of its motion for summary judgment includes the affidavits of Barbara Crockett, Eva Pratt, and Eric Miller. Ms. Crockett, who is employed as a Board secretary by the CALSC, made the following attestations: She attended the March 31, 2011 meeting of the Board and called roll of the members at the beginning of the meeting. Including the Board chairman, seventeen members were present, including eight who participated by telephone. Ms. Crockett could hear those Board members when they commented on matters discussed by the other Board members. The Board has conducted meetings in this same fashion for many years. Ms. Crockett furnished Mr. Wayne and his attorney with a copy of the notice and agenda for the March 31, 2011 meeting ten days prior thereto and sent an amended agenda to Mr. Wayne on March 28. Other than when the Board went into executive session, the entire meeting was tape-recorded, and after listening to the recording, Ms. Crockett prepared the minutes. Each of the votes noted in the minutes were conducted by a roll call vote in which Ms. Crockett called out the name of each Board member participating in the meeting and recorded whether that member voted yes or no. Each Board member participating by telephone responded when that member’s name was called and Ms. Crockett could hear each vote cast. Ms. Crockett attested that the minutes accurately reflected the votes she recorded at the meeting, including the unanimous vote (with one abstention) to ratify the termination of Mr. Wayne’s employment contract.
On June 6, 2011, Ms. Pratt, CALSC’s Vice President of Administration and Chief Financial Officer, attested to the following: CALSC receives the majority of its funding from the LSC. CALSC is required to *108 apply for grants from LSC and as part of that application process, it must sign an agreement to comply with all Inapplicable LSC regulations. During the prior fiscal year, CALSC’s total funding was $2.6 million dollars, of which $1.6 million was received from the LSC grant. CALSC’s next largest source of funding is the Louisiana Bar Foundation’s IOLTA and Children in Need of Care programs, which provided $444,423.00. Additional sources of funding came from the State’s Elderly Protective Services Program iii the amount of $833,000.00, pursuant to a contract to provide legal services to qualified elderly persons; $75,000.00 from the Attorney General’s office; and the balance from various parish and municipal government bodies in the CALSC’s twelve-parish service area. CALSC is required to comply with LSC’s regulations with respect to all of its services, including those performed with funds derived from other agencies. Ms. Pratt was not aware of the CALSC having been designated as an agency by any governmental body, nor has the corporation been sponsored by any governmental resolution.
In his affidavit, Mr. Miller, a member of CALSC’s Board since 2008, made the following attestations: The Board is composed of attorneys and client representatives, all of whom volunteer to serve on the Board and are not compensated for their services. For the past six months, the Board has met at the corporation’s headquarters in Baton Rouge every two weeks, and prior to that, about once every three months, depending on the circumstances. CALSC was incorporated in 1958 and has always been a private, non-profit corporation.
Mr. Miller stated that the Board relied on Mr. Wayne to advise it regarding procedures for Board meetings and LSC regulations and that, prior to his termination, Mr. Wayne led meetings and approved of the participation in Board meetings by members telephoning to a pre-arranged conference call number that was connected to a speakerbox or speakerphone in the meeting room. Mr. Miller attested that the first time he became aware of any issue with this practice was |9when Mr. Wayne filed this lawsuit alleging that the Board violated the Open Meetings Law.
Mr. Miller stated that at the March 31, 2011 meeting, the Board went into executive session to discuss settlement negotiations. No vote was taken during the executive session, and no action was taken by the Board during the executive session. Mr. Wayne’s attorney was present at the March 31 meeting, although Mr. Wayne was not. Mr. Wayne’s attorney was allowed to address the Board any time he wished to do so, and did address the Board at least two times. Prior to taking the vote to ratify the previous decision to terminate Mr. Wayne’s employment, the Board’s chairman asked if anyone had anything else to say. The only persons present at the meeting other than Board members, staff of CALSC, and its counsel were Mr. Wayne’s attorney, his associate, and a newspaper reporter, none of whom spoke up. The Board voted to ratify Mr. Wayne’s termination.
Mr. Miller was also present at the January 11, 2011 meeting. Mr. Wayne had been placed on administrative leave in November 2010. At the January 11, 2011 meeting, Mr. Wayne and his attorney addressed the Board extensively. The meeting lasted over three hours, nearly all of which was spent on the termination issue. Both Mr. Wayne and his attorney made their case to the Board that there was no cause to terminate the employment contract. The Board voted to terminate Mr. Wayne for cause and end his employment contract.
*109 In further support of its motion for summary judgment, CALSC attached the notice and agenda for the March 31, 2011 termination hearing and the minutes of the meeting held on that date. At the meeting, a roll call vote revealed that sixteen members participated in the meeting. The Board went into executive session to discuss litigation. It was stated that no action was taken and no motions were made during the executive session. Fifteen members of the Board then voted to ratify the termination effective January 11, 2011, with one abstention. Thereafter, hpthe Board then moved to terminate Mr. Wayne’s contract, with fifteen members voting to terminate the contract. Mr. Wayne’s attorney then raised an objection regarding the effective date of the termination. All sixteen members of the Board unanimously voted to terminate Mr. Wayne’s employment contract effective March 31, 2011, in the event that the ratification of the January 11, 2011 termination was found to be ineffective.
In opposition to the motion for summary judgment, Mr. Wayne argued that CALSC is a public body within the meaning of the Open Meetings Law because it was organized to perform a governmental function, it is supported by tax-derived funds, and it exercises considerable policy making in administering its legal services programs and distributing the funds it receives. Mr. Wayne also claimed that CALSC’s by-laws expressly acknowledge that it is subject to the Open Meetings Law. Mr. Wayne also urged that CALSC failed to comply with the Open Meetings Law at its March 31, 2011 hearing, thus rendering its attempted ratification of the prior termination without effect. Finally, Mr. Wayne insisted that the Open Meetings Law does provide him with the relief he seeks in this litigation and that such is not preempted by federal law.
In support of his opposition to the motion, Mr. Wayne submitted his affidavit and the affidavit of Amy Mclnnis, his employment contract with CALSC, a copy of CALSC’s Board of Directors’ by-laws, and the minutes of the Board’s January 11, 2011 termination hearing. Mr. Wayne cited Section 1601.21 of the CALSC Board of Director’s by-laws, which he claims constitutes an acknowledgement by CALSC that it is subject to the Open Meetings Law. Section 1601.21 provides as follows:
A meeting of the Board shall be open to the public, unless a majority of all Directors present determines by a record vote to close a meeting or any portion of a meeting to the public pursuant to the Corporation’s regulations implementing 5 U.S.C. 522b and LSA-R.S. |n42:6 et seq. That part of the meeting closed to the public shall be known as an executive session. The Chair of the meeting shall announce the general subject of the executive session prior thereto.
The by-laws state that CALSC is a corporation organized under the laws of the state of Louisiana. The powers and duties of CALSC are set forth in its articles of incorporation. The Board is comprised of 30 directors from three classifications: (1) attorneys who are selected by various bar associations; (2) client members who can prove eligibility under CALSC eligibility guidelines and who are selected by the Baton Rouge Client Council, the La-fourche Parish Community Action Agency, and by the 18th, 20th, 23rd, 32nd and 40th Judicial District Councils; and (3) two at-large members, one of whom does not have to be client eligible and who is selected by the Baton Rouge Chapter of the Louisiana Survival Coalition or other agency designated by the Board, and one who is selected by the Baton Rouge Chapter of the Louis A. Martinet Society.
*110 The by-laws specifically authorize the Director to participate in meetings by telephonic conference. Section 1601.20 states that the Director must be able to communicate with the other Board members present and they must be able to hear the Director’s statements. The provision further states that notice by a Director to participate by telephone shall be given to the Chair no less than 24 hours prior to a meeting. In his affidavit, Mr. Wayne stated that he was unaware of any proof that such notice had been provided for the Board members participating by telephone at either the January 11, 2011 or the March 31, 2011 meeting. He also attested that he reviewed the minutes of the March 31, 2011 meeting and that some of the members were newly-appointed to the Board and had not participated in the January 11, 2011 meeting where the Board voted to terminate him.
The minutes of the Board’s termination hearing held on January 11, 2011, reflect that a total of fifteen members of the Board were present, eleven of whom 112were physically present and four who participated by telephone. The minutes reflect that the Board came out of executive session and that the Board voted to terminate Mr. Wayne’s contract with seven members voting to terminate, one voting not to terminate, and six abstentions.
Ms. Mclnnis attested to the following: She is an attorney who represented Mr. Wayne in the termination matter. She was present at the March 31, 2011 meeting at which only seventeen members participated, including the Board chair. Of the seventeen members, nine were not physically present but participated by telephone. A simple majority of the total twenty-nine Board members were not present and a proper quorum was not established. One Board member who participated by telephone, Henry Lafont, attempted to cast his vote by proxy at one point during the meeting. The Board’s vote to ratify the prior vote on January 11, 2011, and its vote to terminate the contract effective that date in the event the ratification of its earlier decision was invalidated included the votes of the nine physically absent Board members who participated by telephone. The Board did not allow a public comment period prior to voting on its decision to ratify the January 11, 2011 decision to terminate Mr. Wayne’s contract.
At the summary judgment hearing, the trial court made three rulings. First, the court found that the March 31, 2011 meeting was not procedurally defective and held that the March 31, 2011 ratification of the January 11, 2011 vote to terminate Mr. Wayne’s contract was valid for the purpose of the Open Meetings Law. The court found that participation by telephone was valid, as CALSC’s own by-laws recognized telephone participation by its directors and the participation was open and public on a speakerphone. The court saw no requirement that the members had to be physically present, so long as there was the ability for those participating to hear, and that was provided. The court found no action had been taken in executive session, there was the ability for public comment during the 11scourse of the meeting, and therefore, there was no violation of the Open Meetings Law. The court further held that, notwithstanding the statement in the CALSC’s by-laws indicating that the Open Meetings Law applied to it, CALSC is not subject to the Open Meetings Law. The court concluded that CALSC is not a public body within the meaning of that statute. It found that the legislature clearly intended to limit the application of the Open Meetings Law to governmental entities when it changed the definition in that law, but retained a broader definition of the term in the Public Records Law. Finally, *111 the court held that even if CALSC is a public body within the meaning of the Open Meetings Law and that law does apply, the Open Meetings Law is preempted by federal law, and therefore, any deficiencies argued by Mr. Wayne had been cured by the federal law preemption. The trial court signed a judgment on July 13, 2011, granting CALSC’s motion for summary judgment, dismissing Mr. Wayne’s demand for relief with prejudice, and decreeing that this ruling had no effect on the pending reconventional demand. The trial court designated the judgment as a final judgment in accordance with La. C.C.P. art. 1915, finding no just reason for the delay.
When a trial court certifies a judgment as a final one for the purpose of an immediate appeal pursuant to La. C.C.P. art. 1915(B), this court reviews the certification to determine whether appellate jurisdiction exists. In this case, there was no need for the trial court to certify the summary judgment, which disposed of all of the issues raised in Mr. Wayne’s lawsuit and dismissed that lawsuit with prejudice, as a final judgment pursuant to La. C.C.P. art. 1915(B). Louisiana Code of Civil Procedure article 1915(A) provides for the immediate appeal of a judgment granting a motion for summary judgment. We also note that although the CALSC’s reconven-tional demand is still pending in the trial court, the trial court had previously granted an exception of unauthorized use of summary proceedings and severed CALSC’s reconventional demand from Mr. Wayne’s | ^lawsuit for the purpose of conducting separate trials. Because this court clearly has appellate jurisdiction over this appeal under La. C.C.P. art. 1915(A), it is unnecessary to review the propriety of the trial court’s certification.
SUMMARY JUDGMENT
In this appeal, Mr. Wayne contends that the trial court erred in granting CALSC’s motion for summary judgment and dismissing his demand for relief pursuant to the Open Meetings Law. The threshold issue presented by CALSC’s motion for summary judgment is whether, under the undisputed facts of this case, CALSC is not a public body for the purpose of the Open Meetings Law.
This court reviews summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Bickham v. Louisiana Emergency Medical Consultants, Inc., 2010-0535 (La.App. 1st Cir.11/1/10), 52 So.3d 162,164. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. If the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against the motion and in favor of a trial on the |1Bmerits. Lewis v. Four Corners *112 Volunteer Fire Department, 2008-0354 (La.App. 1st Cir.9/26/08), 994 So.2d 696, 698.
In enacting the Open Meetings Law, the legislature declared that it is essential to the maintenance of a democratic society that public business be performed in an open and public manner, so that citizens can be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. The legislature further declared that in order to accomplish this end, the provisions of the Open Meetings Law must be construed liberally. La. R.S. 42:12.
Louisiana Revised Statute 42:14 mandates that every meeting of a public body shall be open to the public unless closed pursuant to other provisions of the act.[2] Louisiana Revised Statute 42:13 defines the term “public body” as follows:
“Public body” means village, town, and city governing authorities; parish governing authorities; school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this paragraph.
It is undisputed that the CALSC is a private, non-profit corporation established pursuant to Louisiana law. It is not a village, town, city or parish governing authority; it is not a school board, levee board, or port commission; it is not a publicly operated utility or a planning, zoning or airport commission; it is not a state, parish, municipal, or special district board or commission; and it is not a committee or subcommittee of any of the bodies enumerated in the definition of “public body.”
l1fiMr. Wayne claims that the definition of public body is “open ended” and not limited to the types of bodies actually listed in the definition, but extends to any “political subdivision ... where such body possesses policy making, advisory, or administrative functions.” He also points out that the legislature has mandated that the Open Meetings Law be liberally construed. La. R.S. 42:12(A). We agree that the term “public body” is broadly defined in La. R.S. 42:13 and extends to entities not specifically listed in the statute, as the provision uses the term “authorities.” Pursuant to the language of La. R.S. 42:13, CALSC may qualify as a public body for the purpose of the Open Meetings Law if it is an “authority” that exercises policy making, advisory, or administrative functions.
In light of the legislative mandate that the Open Meetings Law be given a broad construction, we turn to an examination of the statute and jurisprudence addressing what types of entities qualify as public bodies for the purpose of the Open Meetings Law. In Seghers v. Community Advancement, Inc., 357 So.2d 626, 627 (La.App. 1st Cir.1978), this court held that Community Advancement, Inc., a private, non-profit corporation, constituted a “public body” or “authority” subject to the Open Meetings Law. At the time Seghers was decided, the Open Meetings Law did not provide a definition of the term “public body,” but did define the term “meeting” for the purpose of the Open Meetings Law to mean:
*113 ... the official convening of town and city councils, police juries and other governing bodies; school boards and boards of levee and port commissioners; boards of publicly operated utilities; and all state, parish or municipal boards or authorities with policymaking or administrative functions which receive or expend tax funds, the legislature specifically exempted, to discuss or act upon a matter over which the public body has supervision, control, jurisdiction, or advisory power.
Prior to Community Advancement, Inc.’s formation, the city and parish councils passed resolutions sponsoring the corporation and several years later, both councils passed resolutions reaffirming the sponsorship and redesignating the corporation as |17an agency to administer anti-poverty programs. The corporation derived nearly all of its support from local, state, and federal funds. Although some guidelines were set by the agencies providing the funds, considerable policy making was required of the corporation in both the administration and distribution of funds. Community Advancement, Inc. argued that it was a non-profit private corporation and could not be a public body for the purpose of the Open Meetings Law. This court found that interpretation too restrictive. Instead, we concluded that Community Advancement, Inc. was a “public body” or “authority” within the meaning of the Open Meetings Law. In so doing, this court stressed that: (1) the corporation was organized to perform and has performed a governmental function — the administration of an anti-poverty program; (2) it was supported almost exclusively by tax-derived funds; and (3) it set policy in the distribution of those funds. This court also observed that the city or parish council, if either elected to do so, could have administered the anti-poverty program or delegated the duties to another public body, and the council or other public body would have been subject to the Open Meetings Law. We reasoned that the fact that Community Advancement, Inc. was organized under the legal mechanics of a private non-profit corporation law of Louisiana should not immunize it from the Open Meetings Law. Seghers, 357 So.2d at 627-628.
Mr. Wayne contends that Seghers demonstrates that the mere fact that an entity is a private, non-profit corporation is not dispositive of whether the Open Meetings Law applies. He submits that all of the criteria utilized by this court in Seghers to find Community Advancement, Inc. constituted a public body also apply to CALSC. He contends that it is undisputed that CALSC: (1) was organized to perform and does perform an important government function — providing legal services to indigent citizens in its service area; (2) is supported almost exclusively by tax-derived funds; and (3) exercises considerable policy-making in administering its legal services and distributing the public funds it receives.
CALSC points out that after Seghers was decided, the legislature rewrote and restructured the Open Meetings Law to provide for separate definitions of the terms “meeting” and “public body.” 1979 La. Acts, No. 681, § 1 The term “public body” retained the description of the various governmental authorities and political authorities and authorities possessing policy making, advisory, or administrative functions found in the previous definition of “meeting,” but eliminated the reference to the receipt or expenditure of tax funds. CALSC contends that the change in the law evidences the legislature’s express repudiation of the receipt of public money as a factor in determining whether an entity is a public body for the purpose of the Open Meetings Law.
*114 We disagree. Instead, we believe that by removing the receipt of public funds from the definition of “public body,” the legislature intended to preclude the receipt of public funds from being the sole factor making an entity a public body for the purpose of the Open Meetings Law. The manner in which an entity is financed remains a relevant factor in determining whether an entity is a public body; however, that factor alone is no longer sufficient to make an entity a public body subject to the Open Meetings Law. This interpretation is supported by the Louisiana Supreme Court’s decision in Spain v. Louisiana High School Athletic Association, 398 So.2d 1386 (La.1981), which considered the manner in which the entity was financed as a factor in determining that it was a public body for the purpose of the Open Meetings Law.
In Spain, the court was asked to determine whether the Louisiana High School Athletic Association (LHSAA) was a public body subject to the requirements of the Open Meetings Law. Although LHSAA had been recognized as a private, unincorporated, voluntary association in a number of cases, the court |19found LHSAA to be a public body for the purposes of Open Meetings Law. In so doing, the court observed:
The LHSAA performs a function which is, by law, entrusted to the various bodies established for the regulation of public education, It is funded by public money earned by state schools at athletic events. It has established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves with regard to athletic and academic endeavors, all with the acquiescence and implied blessing of the legislature, Board of Elementary and Secondary Education, Superintendent of Education, and local school boards. See Seghers v. Community Advancement Inc., 357 So.2d 626 (La.App. 1st Cir.1978). Equally important is the degree of con-nexity between the regulatory functions of the LHSAA and the regulatory functions of a particular “public body” found in R.S. 42:4.2(A)(2). Here the connexity is close, since LHSAA performs a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.
Viewed in this light, the LHSAA and its official committees and subcommittees in their present form do constitute collective committees or subcommittees of the parish school boards or State Board of Elementary and Secondary Education for the purposes of the Open Meetings Law.
Spain, 398 So.2d at 1390 (footnote omitted).
The legislative history surrounding the definition of the term “public body” and the jurisprudence construing that term establish that the fact an entity is set up as a private non-profit corporation is not dis-positive of the question of whether it is a public body for the purpose of the Open Meetings Law. Moreover, the mere fact that an entity receives public money does not make it a public body for the purpose of the Open Meetings Law. Rather, there are a number of factors that must be considered in determining whether an entity is subject to the Open Meetings Law. Four factors courts have looked at in making this determination are: (1) whether the entity performs a government function or performs a function which, by law, is entrusted to other public bodies; (2) whether the entity is funded by public money; | ¾0(3) whether the entity exercises policy-making, advisory, and administrative functions; and (4) whether there is a connexity be *115 tween the functions of the entity and the functions of a particular “public body” identified in La. R.S. 42:13(A)(2).
The evidence on the motion for summary judgment does not establish that the first two factors cannot be met. The primary purpose of establishing legal aid societies such as CALSC is so that low income persons will have equal access to our system of justice. CALSC is carrying on that important governmental objective by providing quality legal services to indigent persons who could not otherwise afford those services. Additionally, CALSC’s summary judgment evidence established that it receives money from the State’s Elderly Protective Services Program, pursuant to a contract to provide legal services to qualified elderly persons, and also receives money from parish and municipal governmental bodies within its twelve-parish area.
Nor does the evidence establish that CALSC lacks the requisite connexity to a public body enumerated in the statute or that it does not exercise policy making, administrative, or advisory functions. The evidence on the motion for summary judgment is insufficient to resolve the genuine issues of material fact regarding the con-nexity element. Moreover, we note that in Community Press, LLC v. CH2M Hill, Inc., 2011-0682 (La.App. 1st Cir.2/10/12) (unpublished), writ denied, 2012-0572 (La.4/20/12), 85 So.3d 1274, this court questioned whether such fact-based issues such as the connexity requirement in the Spain analysis could ever be resolved on a motion for summary judgment.
Finally, CALSC’s own by-laws mandate that the Board’s meetings shall be open to the public unless a majority of the directors determines by a record vote to close a meeting or any portion of a meeting pursuant to La. R.S. 42:6, which sets forth those circumstances under which a public body may hold executive sessions and which prohibits a public body from taking a final action during executive [2i session. If CALSC deemed itself to be a public body and acted over a course of time as a public body, such conduct, while not determinative of the issue, is clearly relevant to a determination of whether, under all of the facts of this case, CALSC is a public body for the purpose of the Open Meetings Law.
Given the strong public policy behind the Open Meetings Law and the broad construction mandated of its provisions, in light of the evidence on the motion for summary judgment, we conclude that the trial court erred in finding that, as a matter of law, CALSC is not a public body for the purpose of the Open Meetings Law. Therefore, we reverse the summary judgment as to that issue.
The trial court granted summary judgment on two additional bases. It found that the Open Meetings Law had not been violated and that federal law preempted the Open Meetings Law. Because CALSC’s status as a public body is a threshold issue to the determination of the remaining issues, and because we have found that the trial court erred in determining that CALSC was not a public body on the motion for summary judgment, we do not believe the remaining issues present a justiciable controversy at this time. If it is determined by the trial court, following a hearing and presentation of the evidence, that CALSC is not a public body, the remaining issues presented by the motion for summary judgment will be moot, and any pronouncement this court may have made on those issues in this appeal would merely be an advisory opinion. It is well settled that courts will not render advisory opinions as to abstract or moot controversies. Coffee Bay Investors, LX.C. v. W.O.G.C. Co., 2003-0406 (La.App. *116 1st Cir.4/2/04), 878 So.2d 665, 673, writ denied, 2004-1084 (La.6/25/04), 876 So.2d 838. Therefore, we pretermit discussion of the alternative bases upon which summary judgment was granted by the trial court.
^CONCLUSION
For the foregoing reasons, the judgment appealed from is reversed. The case is remanded to the trial court to conduct an evidentiary hearing on the issue of whether CALSC is a public body for the purpose of the Open Meetings Law. All costs of this appeal are assessed against appellee, Capital Area Legal Services Corporation.
REVERSED AND REMANDED.

. Mr. Wayne filed an exception raising the objection of improper cumulation of actions, asserting that the enforcement proceedings pursuant to the Open Meetings Law must be tried by preference and in a summary manner, while the reconventional demand asserted a breach of contract claim and claims for damages, which must be tried by ordinary proceedings. On April 12, 2012, the trial court denied the exception as moot per agreement of counsel. The following day, the court recalled that order and set the exception for a hearing. On May 9, 2011, the trial court entered judgment denying that exception, but treating it as an exception raising the objection of the unauthorized use of summary proceedings, and granted the exception, thereby severing Mr. Wayne's claims pursuant to the Open Meetings Law from CALSC’s claim for damages set forth in the reconventional demand, for the purpose of conducting separate trials.

. The provisions of the Open Meetings Law, consisting of former La. R.S. 42:4.1 through 42:13, were redesignated as La. R.S. 42:12 to 42:28 by 2010 La. Acts No. 861, § 23.